[No. B028882. Second Dist., Div. Six. Jan. 10, 1989.]

JAVIER C. LOPEZ, Plaintiff and Appellant, v.
CITY OF OXNARD et al., Defendants and Respondents.

COUNSEL

Brown & Goldberg and Louis Goldberg for Plaintiff and Appellant.

Kosmo, Cho & Brown, Duane Skavdahl, Spray, Gould & Bowers and Susan B. Gans-Smith for Defendants and Respondents.

OPINION

**GILBERT, J.**—Plaintiff Javier C. Lopez was arrested three times on an outstanding warrant issued by the municipal court. The person named in the warrant had the same name, birth date, address and physical description as plaintiff Lopez. There was, however, a problem. Lopez was not the person named in the warrant. The court offered a solution. After his first arrest, the court prepared a document called a "disposition sheet" for Lopez to carry with him. It stated that Lopez was not the person named in the warrant. When arrested again, he showed the disposition sheet to the arresting officers and the sheriff. They refused to verify its validity.

Lopez filed an action for damages for false imprisonment and for negligence against the defendant public entities and their employees.

He appeals the judgment of dismissal, entered after defendants' demurrers to his second amended complaint were sustained without leave to amend.

Lopez asserts, among other things, that the court erred in its ruling because the arresting officers and the jail personnel should have verified the validity of the court order he held. Because neither the police officers nor the jailers breached any duty in refusing to consider the disposition sheet he showed to them, we affirm the judgment.

FACTS

On April 26, 1981, the Oxnard City Police Department arrested and booked an individual for driving under the influence and driving without a license. The man arrested gave Lopez's date of birth, address and name as his own. He posted bail and was released the next day. On May 12, 1981, he failed to appear in the municipal court and a warrant was issued for his arrest.

On July 23, 1981, the Oxnard City Police Department arrested Lopez for a misdemeanor. The outstanding warrant of April 26 came to light, and ultimately the court determined Lopez was not the individual sought under the warrant. The municipal court gave Lopez a "disposition sheet" stating he was not the person named in the warrant.[1]

On November 4, 1983, Ventura County Sheriff's Deputy Bornand arrested Lopez on the outstanding warrant. Lopez showed his disposition sheet to Deputy Bornand and to sheriff's personnel. Nevertheless, he was held in the Ventura County jail for three days before being released.

On April 20, 1984, an Oxnard police officer stopped Lopez for speeding. After the officer discovered there was an outstanding warrant for someone named Javier Carrillo Lopez, plaintiff Lopez was taken to the Oxnard City jail where he was held for three hours before the authorities determined he was not the person named in the warrant.

In Lopez's second amended complaint, he alleges six causes of action. They include: 1. negligent failure of the County of Ventura and the City of Oxnard to correct their records to enable authorities to distinguish between Lopez and the criminal they seek, 2. false imprisonment for the November 1983 imprisonment of Lopez, 3. intentional infliction of emotional distress,

---

[1] Various photocopies of this disposition sheet are in the record, but they are difficult to read. The document is entitled "PROCEEDING/DISPOSITION NOTICE. " It is a form notice which concerns the status of a case. The seal of the court is on it, and it has a signature of a deputy clerk of the court. In handwriting it states: "Court finds: Person arrested in case 117391-3 is not Javier Carrillo Lopez bearing Ca. Dr. Lic. #N61286." A social security number is handwritten on it, too. No fingerprints or other identifying information is on the notice.

4. battery against the County of Ventura and Deputy Bornand regarding the November 1983 incarceration, 5. negligence against the City of Oxnard for disregarding his proffered disposition sheet during the April 1984 arrest and detention, and 6. false imprisonment against the City of Oxnard.

The complaint alleged, among other things, that on September 28, 1981, the court found Lopez was not the person charged under the warrant and that the court provided him with a "disposition sheet" which so stated. Lopez alleged he showed this disposition sheet to the arresting officers and to the sheriff's deputies at the jail to no avail.

All defendants demurred to Lopez's complaint. On June 17, 1987, the trial court sustained all demurrers without leave to amend as to all causes of action. In its order, the court took judicial notice of the 1981 disposition sheet. But no order of dismissal appears to have been made on that date. The City of Oxnard filed a notice of entry of judgment on June 26, 1987, which states judgment was entered for the city and against plaintiff on June 17, 1987.

On June 30, 1987, Lopez filed his notice of appeal regarding the "judgment" entered in favor of the City of Oxnard and the County of Ventura. On July 2, 1987, the court awarded judgment to the County of Ventura and to Ventura County Sheriff's Deputy Bornand. We construe the notice of appeal liberally in favor of adjudication on the merits. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 59, pp. 82-83; §§ 375-376, pp. 377, 379-380; § 412, pp. 410-411; *id.* (1988 supp.) § 59, p. 6; §§ 375-376, pp. 32-33.)[2]

We do not view the failure to designate Deputy Bornand as an appellee in the notice of appeal as fatal to our consideration of the appeal as to him under these particular facts. (*Beltram* v. *Appellate Department* (1977) 66 Cal.App.3d 711, 715 [136 Cal.Rptr. 211].) The parties stipulated to consolidation of the demurrers for hearing. We construe the order of June 17, 1987, and the judgment entered on July 2, 1987, as a timely entry of judgment as of June 17, 1987, as to all parties defendant. (See fn. 2, *ante.*)

## DISCUSSION

■ The function of a demurrer is to test the sufficiency of the complaint by raising questions of law. (*Rader Co.* v. *Stone* (1986) 178 Cal.App.3d 10,

---

[2] We order the judgment below amended to state: "Following defendants' consolidated demurrers to plaintiff's second amended complaint which were granted without leave to amend on June 17, 1987, and good cause appearing therefor, JUDGMENT of dismissal as to all causes of action is hereby awarded defendants and against plaintiff JAVIER C. LOPEZ with COSTS awarded to defendants.

"Clerk of this court is directed to enter this judgment and give notice thereof."

20 [223 Cal.Rptr. 806].) Demurrers are treated as admitting the truthfulness of all properly pleaded factual allegations of the complaint, but not of its contentions, deductions or conclusions of law. (*Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 827 [134 Cal.Rptr. 839]; *White* v. *Davis* (1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222].) In ruling on a demurrer, the court is entitled to consider matters which may be judicially noticed. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

■ A general demurrer should not be sustained without leave to amend if the complaint, liberally construed, states a cause of action on any theory. (*Rader Co.* v. *Stone, supra,* 178 Cal.App.3d at p. 20.) ■ On appeal, however, all intendments are in favor of the regularity of the proceedings and the judgment below. Unless clear error or abuse of discretion is demonstrated, the judgment will be affirmed. (*Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698 [141 Cal.Rptr. 189].)

False imprisonment is defined by statute as "the unlawful violation of the personal liberty of another." (Pen. Code, § 236.) ■ To state a cause of action for false imprisonment, one must state facts showing either that one was unlawfully arrested and then imprisoned, or that an unreasonable delay occurred in presenting the arrestee before a magistrate. (*City of Newport Beach* v. *Sasse* (1970) 9 Cal.App.3d 803, 810 [88 Cal.Rptr. 476].)

*The arresting officers*

Civil Code section 43.55 provides immunity to and precludes actions against "any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if the peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant." Penal Code section 847 precludes actions for civil liability against any peace officer for false imprisonment if he was acting within the scope of his authority and the arrest was lawful or if, at the time of the arrest, the officer had reasonable cause to believe the arrest was lawful.

■ A police officer must use reasonable prudence and diligence to determine whether a party being arrested is the one described in the warrant. The officer may not refuse to act upon information offered him which discloses the warrant is being served on the wrong person. But, the prudence and diligence required of an arresting officer in determining whether to make an arrest must be balanced against the need to act swiftly and to make on-the-spot evaluations, often under chaotic conditions. (See *Whirl* v. *Kern* (5th Cir. 1969) 407 F.2d 781, 790.) He need not choose between the

possibility of being charged with dereliction of duty for failure to arrest and the possibility of being held to answer in damages for unlawful arrest or false imprisonment. (See Pen. Code, § 142.)

It is not the function of an arresting officer to investigate the procedure by which the warrant was issued, nor is it his duty to consider the propriety of its issuance provided the warrant is regular on its face. (See *Herndon* v. *County of Marin* (1972) 25 Cal.App.3d 933, 936 [102 Cal.Rptr. 221], disapproved on other grounds concerning malicious prosecution in *Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710, 722, fn. 10 [117 Cal.Rptr. 241, 527 P.2d 865].)

■ The facts alleged here do not show a lack of reasonable precaution on the part of the arresting officers. (*Smith* v. *Madruga* (1961) 193 Cal.App.2d 543, 546 [14 Cal.Rptr. 389].) The instant warrant accurately described Lopez, and included his proper name, address, telephone number and driver's license.

Lopez makes no allegations that the warrant was either irregular on its face or that it did not adequately describe him. The trial court took judicial notice of the warrant and found it to be regular. (Code Civ. Proc., § 430.30, subd. (a); *Blatty* v. *New York Times Co.* (1986) 42 Cal.3d 1033, 1040 [232 Cal.Rptr. 542, 728 P.2d 1177].) There are no allegations the officers were acting outside the scope of their duties at the time of the arrests. It is presumed the officers acted regularly in the performance of their duties in making these arrests. (Evid. Code, § 664.)

Peace officers must execute all process and orders which are apparently regular on their face and issued by competent authority, even if there were defects in the proceedings upon which they were issued. (Code Civ. Proc., § 262.1; see *Allison* v. *County of Ventura* (1977) 68 Cal.App.3d 689, 697 [137 Cal.Rptr. 542]; *Vallindras* v. *Massachusetts etc. Ins. Co.* (1954) 42 Cal.2d 149, 154 [265 P.2d 907].) Failure to have arrested Lopez may have subjected the officers to criminal liability. (Pen. Code, § 142.)

Lopez asserts that the question of whether the officers' beliefs were reasonable is one of fact which should survive demurrer. He cites *Robinson* v. *City and County of San Francisco* (1974) 41 Cal.App.3d 334 [116 Cal.Rptr. 125], and *Smith* v. *Madruga, supra,* 193 Cal.App.2d 543, in support of this argument. They are inapposite. Unlike *Robinson,* there is no allegation the officers arrested someone whose name did not correspond with the name stated on the warrant. Instead, the police made the instant arrests on the basis of a warrant regular on its face describing Lopez. In *Robinson,* the warrant named a Harold Cunningham, but the officers arrested the well-

known performer Smokey Robinson. Unlike the *Robinson* situation, there is no factual question whether the officer had a reasonable belief that Lopez was the person named in the warrant.

This case is also unlike *Smith* v. *Madruga, supra,* 193 Cal.App.2d 543. In *Smith,* plaintiff alleged that he was arrested when defendants knew he was not the person named in the arrest warrant. As in *Robinson,* Smith alleged that his name did not correspond with the name in the warrant. The plaintiff's name in *Smith* is Bennie Lee Smith. The warrant listed the true criminal's name, Bennie Leon Smith.

*Abbott* v. *Cooper* (1933) 218 Cal. 425 [23 P.2d 1027], does not assist Lopez either. In *Abbott,* a "rival" private police patrol officer, who was also a deputy constable, was arrested and jailed without warrant; there was no proper basis for doing so. (*Abbott, supra,* at p. 427.)

Lopez's allegations that the arresting officers acted with malice are insufficient; one must plead such facts with particularity to adequately support a complaint for a tort claim against a public entity. (*Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803, 809 [75 Cal.Rptr. 240].) There are no facts alleged which indicate the arresting officers acted unreasonably or with malice. Despite Lopez's presentation of the disposition sheet to the arresting officers, the police officer cannot be held answerable for this arrest. (Pen. Code, § 847; Civ. Code, § 43.55; *Moore* v. *City & County of San Francisco* (1970) 5 Cal.App.3d 728, 735 [85 Cal.Rptr. 281].)

*Refusal of jail personnel to consider the disposition notice*

Lopez also asserts that the refusal of jail personnel to consider the proffered disposition sheet resulted in his false imprisonment. He states it was their duty to ascertain whether or not the court had previously determined he is not the person sought under the instant warrant when he presented that disposition sheet. We disagree.

Jail personnel may not be similarly situated to police officers on the street, but they, too, are entitled to rely on process and orders apparently valid on their face. (See *Whirl* v. *Kern, supra,* 407 F.2d at pp. 791-792.)

Code of Civil Procedure section 262.1 states: "A sheriff or other ministerial officer is justified in the execution of, and shall execute, all process and orders regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued." (*Vallindras* v. *Massachusetts etc. Ins. Co., supra,* 42 Cal.2d at pp. 151-154.) Said the court in *Moore* v. *City & County of San Francisco, supra,* 5 Cal.App.3d at

page 735: "Imprisonment based upon a lawful arrest is not false, and is not actionable in tort." (Accord *Whirl* v. *Kern, supra,* 407 F.2d at p. 791.)

In *Vallindras, supra,* plaintiff was incarcerated for criminal contempt for failure to pay spousal support. The contempt order was technically void on its face due to a minor error. Nevertheless, the Supreme Court held that the plaintiff did not state a civil cause of action for damages for false imprisonment because the sheriff was justified in executing it. (*Vallindras* v. *Massachusetts etc. Ins. Co., supra,* 42 Cal.2d at pp. 151-152, 154.)

■ If a warrant appears valid to an ordinarily intelligent and informed layman and the issuing court has subject matter jurisdiction, the sheriff is ordinarily entitled to protection from civil suits for damages for false imprisonment. (*Vallindras* v. *Massachusetts etc. Ins. Co., supra,* 42 Cal.2d at p. 154.) The sheriff may rely upon the warrant even if jurisdiction over the person is actually improper. (*Ibid.; Magnaud* v. *Traeger* (1924) 66 Cal.App. 526, 532 [226 P. 990].)

Although a sheriff is "obliged to use reasonable diligence to perform the duties of his office in a lawful manner," he need not ordinarily search for facts not apparent on the face of a warrant. (*Vallindras* v. *Massachusetts etc. Ins. Co., supra,* 42 Cal.2d at pp. 154, 155-156; *Burlingame* v. *Traeger* (1929) 101 Cal.App. 365 [281 P. 1051] ; *First Nat. Bank* v. *McCoy* (1931) 112 Cal.App. 665, 670 [297 P. 571].)

■ Sheriffs are not absolutely immune from civil suits for false imprisonment. Sheriffs may be responsible in damages for false imprisonment if they know the imprisonment is unlawful or if they are put on official notice sufficient to require investigation of its validity. (*Sullivan* v. *County of Los Angeles, supra,* 12 Cal.3d at p. 719.) But, reversal is not required in this case. The facts in *Sullivan* are distinguishable.

In *Sullivan,* the sheriff allegedly failed to respond to an *official* notice of release sent through official channels. The sheriff may have violated Penal Code section 1384 in failing to discharge Sullivan. Under Penal Code section 1384, the sheriff is under a mandatory duty to release a prisoner in custody if a judge or magistrate directs dismissal of the action. The *Sullivan* court found that the sheriff may be liable in damages for false imprisonment for his failure to investigate the validity of that official release notice. (*Sullivan* v. *County of Los Angeles, supra,* 12 Cal.3d at pp. 719, 722.)

In *Whirl,* official dismissal of the case rendered the warrant defunct and stripped the sheriff of legal authority to hold the plaintiff in custody. (*Whirl* v. *Kern, supra,* 407 F.2d at p. 791, fn. 10.) The sheriff's claim he was

unaware that the plaintiff was on a dismissal list was no excuse. He received actual official notice of the dismissal. (See *Whirl, supra,* at pp. 785-786, 791; but see *Bryan* v. *Jones* (5th Cir. 1976) 530 F.2d 1210, 1213, 1214-1215.) An illegal imprisonment is wrong from its inception, and the jailer can be held liable for it. (*Whirl, supra,* at p. 791.)

Here, however, the sheriff simply refused to look behind a valid warrant to investigate the validity of statements on a piece of paper handed to him by an arrestee. The sheriff violated no statute. And, unlike *Sullivan* and *Whirl,* Lopez could not languish in jail for months or years. By law, a defendant must be taken to appear before a magistrate within two days after his arrest, excluding Sundays and holidays. (Pen. Code, § 825; see *Whirl* v. *Kern, supra,* 407 F.2d at p. 792.) Lopez was held only until he appeared before the magistrate. In the second instance, no charges were ever made and he was released within a few hours.

A sheriff, as a ministerial officer of the court, may safely proceed to incarcerate an individual on a warrant apparently valid on its face which comes from a court with subject matter jurisdiction. (Code Civ. Proc., § 262.1.) It is true that under *Sullivan* liability may attach when the sheriff actually knows the imprisonment was illegal or when the sheriff has sufficient notice from an official source which calls for further investigation into the validity of the incarceration. (*Sullivan* v. *County of Los Angeles, supra,* 12 Cal.3d at pp. 714, 719; *Whirl* v. *Kern, supra,* 407 F.2d at pp. 791-792; Code Civ. Proc., § 262.1; *First Nat. Bank* v. *McCoy, supra,* 112 Cal.App. at p. 670.) But, generally this rule applies in situations where the sheriff is not acting pursuant to a warrant valid on its face.

Other cases cited by Lopez are inapposite. This case is unlike *Abbott, supra,* involving a warrantless arrest which the sheriff knew was invalid. Nor is it like *Smith* or *Robinson, supra,* in which the people arrested did not fit the facts stated on the warrant. And this case is unlike *Bradford* or *Shakespeare, infra,* in which the sheriff was under a mandatory, statutory duty to release the respective prisoners.

*Initial disposition order as continuing order. Applicability of Penal Code section 1384 and the Sullivan case*

Lopez also argues that defendants falsely imprisoned him because previous records of the Ventura Municipal Court, which state that the warrant does not apply to him, constitute a continuing order which mandates that defendants immediately dismiss any current charges against him and release him, pursuant to Penal Code section 1384.

Lopez's reliance on Penal Code section 1384 and the case of *Sullivan* v. *County of Los Angeles, supra,* 12 Cal.3d 710, to support this theory is misplaced. Penal Code section 1384 states, in pertinent part: "If the judge or magistrate directs the action to be dismissed, the defendant must, if in custody, be discharged therefrom . . . ."

Aside from Lopez's failure to specifically allege the violation of Penal Code section 1384 in his complaint as he is required to do (see *Lehto* v. *City of Oxnard* (1985) 171 Cal.App.3d 285, 292-294 [217 Cal.Rptr. 450]), section 1384 and the *Sullivan* case are inapplicable under the facts pled. In *Sullivan, supra,* unlike the instant case, the defendant was held in jail long after all current charges against him had been dismissed, in part because the superior court failed to issue a release order as to those charges. The *Sullivan* court held that the complaint stated a direct cause of action against the county on that basis. (*Sullivan* v. *County of Los Angeles, supra,* 12 Cal.3d at p. 715.)

Here, Lopez did not allege that a judge or magistrate failed to direct the instant charges be dismissed, nor that there was any delay in discharging him upon judicial action pursuant to section 1384. Instead, Lopez pled he was released after his appearance before the municipal court in the 1983 incident, and he was released without being charged or being brought before judicial authority in the 1984 incident.

*Failure to correct court records to reflect disposition*

Lopez's complaint alleges that the County of Ventura and the City of Oxnard negligently and unlawfully failed to correct their records to reflect the previous disposition of the court which stated that he was not the criminal sought by the warrant. His complaint alleges that the public entities, the City of Oxnard and the County of Ventura, had a duty to correct their records to assist the court and the police in identifying the correct suspect in the instant case. We disagree. The authority Lopez cites does not support this theory.

Lopez cites *Bradford* v. *State of California* (1973) 36 Cal.App.3d 16 [111 Cal.Rptr. 852], for the proposition that these public entities had a duty to correct their records to reflect the prior disposition.

Bradford obtained dismissal of his conviction for violation of Penal Code section 647a pursuant to the provisions of Penal Code section 1203.4. His duty to register as a sex offender ceased following the 1203.4 dismissal.

Nonetheless, plaintiff was arrested after the dismissal and charged with failure to register as a sex offender, a violation of Penal Code section 290.

Although the case was ultimately dismissed on demurrer, Bradford sued for damages arising out of the state's negligent failure to enter the dismissal pursuant to the mandatory recording requirements for such dismissals contained in Penal Code sections 11116.6 and 11117. The *Bradford* court held that the plaintiff properly pled the negligent failure of the state to perform a mandatory duty imposed by statute, for which there is no immunity under the Tort Claims Act. (*Bradford* v. *State of California, supra,* 36 Cal.App.3d at pp. 18-19.)

Here, however, Lopez makes no such allegations of a specific statutory basis upon which to hold the public entities directly liable, as required by Government Code section 815. (See *Lehto* v. *City of Oxnard, supra,* 171 Cal.App.3d at pp. 292-294.) The facts pleaded by Lopez do not show a cause of action under the Tort Claims Act for violation of a mandatory statutory duty. Understandably, he alleges no such statutory duty upon the County because there is none. (*Ibid.*)

*Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375 [40 Cal.Rptr. 863], is also inapposite. It concerned the failure of the jailer, pursuant to the specific, mandatory provisions of Penal Code section 1295, to release one who had posted bail.

Although we are bound by statutory immunity provisions, *supra,* we are sympathetic to the plight of Mr. Lopez. To reduce the risk of this occurring again, we suggest that such disposition notices include as much identifying information as possible, including fingerprints and photographs.

The judgment is affirmed. The parties are to bear their own costs.

Stone (S. J.), P. J., and Abbe, J., concurred.