[No. B086031. Second Dist., Div. Five. Sept. 19, 1996.]

CONDOR INSURANCE COMPANY, Plaintiff and Appellant, v. WILLIAMSBURG NATIONAL INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Gregory F. Stannard and Peter J. King for Plaintiff and Appellant.

Davidovitz & Yaron, Robert A. Cutbirth and Lauren O'Brien for Defendant and Respondent.

**OPINION**

**ARMSTRONG, J.**—Condor Insurance Company (Condor) appeals the judgment entered following the successful demurrer of Williamsburg National Insurance Company (Williamsburg) to Condor's complaint for declaratory relief. In this opinion we consider the effect of the Public Utilities Commission (P.U.C.) endorsement contained in the automobile liability insurance policy of a P.U.C. permit holder, which provides, among other things, minimum amounts of liability insurance.

## FACTS

The allegations of Condor's first amended complaint, which we must accept as true for purposes of reviewing the judgment (*Serrano* v.

*Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]), reveal the following facts: Condor issued an automobile liability insurance policy to Ann B. Mabry, doing business as Sunshine Express, with liability limits of $250,000 per person and $500,000 per accident.[1] Mabry owned the tractor/trailer rig insured under and described in the Condor policy (the Mabry Truck). Sandra Musial, Mabry's employee, was operating the Mabry Truck on October 9, 1991, when it collided with a vehicle driven by Greg Leamon.

At the time of the accident, Mabry and Musial (who together are referred to herein as the Condor Insureds) were subhauling a load under the P.U.C. permit of Ayala Brothers Trucking. As such, at the time of the accident, the Mabry Truck was a vehicle for which a permit was required to be issued by the P.U.C. Ayala Brothers Trucking, as well as its principals Jesus Ayala, Jr., and Raul B. Ayala (who are together referred to as the Williamsburg Insureds), were the named insureds under a policy of automobile liability insurance issued by Williamsburg.

Leamon filed a complaint against the Condor Insureds for injuries suffered in the accident, which action Condor defended. Leamon made a demand to settle the case for the Condor policy limits of $250,000; Condor rejected that offer. A jury subsequently returned a verdict against the Condor Insureds in the amount of $1,314,200.

Condor immediately paid Leamon its policy limits of $250,000, along with $105,000 in costs awarded by the court. Condor then filed this declaratory relief action against Williamsburg, Mabry, and Musial, seeking a declaration that it had satisfied its obligations to Mabry and Musial under the insurance policy, and that Williamsburg was required to contribute its policy limits towards the judgment entered in favor of Leamon against the Condor Insureds by reason of the P.U.C. endorsement attached to the Williamsburg policy.[2] That endorsement states: "The policy to which this endorsement is attached is . . . hereby amended to assure compliance by the insured, . . . with General Order No. 100-series and the pertinent rules and regulations of the Public Utilities Commission of the State of California. [¶] . . . [T]he Company hereby agrees to pay, within the limits of liability hereinafter provided, any final judgment rendered against the insured for . . . loss of or damage to property of others . . . resulting from the operation, maintenance,

---

[1]The complaint does not indicate whether Sunshine Express and/or Mabry were P.U.C. permit holders. The Condor policy did, however, include the standard P.U.C. endorsement.

[2]Both Mabry and Musial filed cross-complaints against Williamsburg, seeking declaratory relief with respect to Williamsburg's liability to them by reason of the P.U.C. endorsement contained in the Ayalas' insurance policy.

or use of motor vehicles for which a certificate of public convenience and necessity or permit is required or has been issued to the insured by the Public Utilities Commission of the State of California, regardless of whether such motor vehicles and/or trailers are specifically described in the policy or not, and/or resulting from any other action by the insured and/or the insured's employees while engaged in the course of performing under the aforementioned certificate of public convenience and necessity or permit."

The trial court sustained Williamsburg's demurrer. The court specifically found that "Williamsburg provided excess coverage for Ayala, including the mandatory $250,000 P.U.C. endorsement for truck operators using Ayala's license. [¶] Williamsburg's liability for damages in this case is triggered only by reason of the P.U.C. endorsement which treats Sunshine as an 'insured' of Williamsburg since Sunshine operated a truck under Ayala's license. However, there is a $250,000 limit on the liability to any 'insured' under the P.U.C. endorsement. Since Sunshine's own P.U.C. coverage thru [*sic*] Condor has already satisfied the $250,000 P.U.C. limit, Williamsburg has no additional liability to Sunshine or Condor."[3] Condor appeals this ruling. We hold that the trial court correctly concluded that the Condor Insureds were covered under Williamsburg's policy by reason of the P.U.C. endorsement, and that Williamsburg's coverage was excess to that of Condor. We disagree, however, with the lower court's ruling that Williamsburg's liability under the policy was "satisfied" by Condor's payment of the minimum P.U.C. limits of $250,000. Consequently, we reverse the judgment and remand the matter for further proceedings.

### DISCUSSION

As the parties recognize, the analysis of the question here presented is twofold. First, were the Condor Insureds also "insureds" under the Williamsburg policy by reason of the P.U.C. endorsement? And if so, was Williamsburg's liability to its insureds (Mabry and Musial) satisfied when Condor paid the injured Leamon, on behalf of Mabry and Musial, $250,000, the minimum liability coverage required by the P.U.C. endorsement?

### 1. *Were Mabry and Musial "insureds" under the Williamsburg policy?*

■ Both parties agree that the Williamsburg policy language alone, without reference to the P.U.C. endorsement, cannot be read to cover the Condor Insureds as named insureds or additional insureds. Condor argues,

---

[3]The trial court, in separate proceedings, sustained on the same grounds Williamsburg's demurrer to the cross-complaints filed by Mabry and Musial. The judgments entered on the cross-complaints are not before us on this appeal.

however, that its insureds, Mabry and Musial, became insureds under Williamsburg's policy by reason of the P.U.C. endorsement. Specifically, Condor cites the portion of the P.U.C. endorsement stating that the policy covers bodily injury and property damage "resulting from the operation, maintenance, or use of motor vehicles and/or trailers for which a certificate of public convenience and necessity or permit is required or has been issued to the insured by the Public Utilities Commission of the State of California, *regardless of whether such motor vehicles and/or trailers are specifically described in the policy or not.*" Condor contends that this language renders the Mabry Truck a covered vehicle under the Williamsburg policy. Williamsburg counters that there is nothing in the P.U.C. endorsement which expands the definition of an *insured* under its policy, and the language of the endorsement itself limits the insurer's liability to "any final judgment rendered against the *insured*. . . ."

The automobile liability policy issued by Williamsburg was purchased by a highway carrier, Ayala Trucking, to satisfy P.U.C. regulations. ▮ "Because this policy is one 'required by law,' under *Samson* [v. *Transamerica* (1981) 30 Cal.3d 220 (178 Cal.Rptr. 343, 636 P.2d 32)] the policy must be read in light of its original provisions as well as those added to the policy by the PUC's standard form endorsement attached to the policy." (*Transamerica Ins. Co.* v. *Tab Transportation, Inc.* (1995) 12 Cal.4th 389, 399 [48 Cal.Rptr.2d 159, 906 P.2d 1341].)

The purpose behind the P.U.C. endorsement has been discussed in a number of appellate cases. The requirement that highway carriers obtain insurance against liability for personal injury and property damage was first added to the Public Utilities Code in 1935. (Stats. 1935, ch. 223, § 5, p. 880.) The purpose of the insurance requirement is " 'to protect the public against reckless operation of such vehicles by financially irresponsible owners, and to provide a means of recovery for those injured in their person or property by such operation.' " (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 504 [99 Cal.Rptr. 617, 492 P.2d 673].)

The Supreme Court had occasion to interpret the meaning of the P.U.C. endorsement in *Samson* v. *Transamerica* (1981) 30 Cal.3d 220 [178 Cal.Rptr. 343, 636 P.2d 32]. There, the court observed: "The Highway Carriers' Act begins with a statement that '[t]he use of the public highways for the transportation of property for compensation is a *business* affected with a public interest.' (Pub. Util. Code, § 3502. Italics added.) *Businesses* that transport property are required to obtain a P.U.C. certificate or permit. [Citation.]" (30 Cal.3d at p. 233, italics in original.)

The *Samson* court continued: "Transamerica has cited no authority which indicates that the jurisdiction of the P.U.C. is limited to the regulation of the

particular vehicles which actually transport property. To the contrary, P.U.C. regulations demonstrate a concern with the entire highway carrier business. The Highway Carriers' Act has been interpreted as being designed to protect the public from a broad range of potential problems incidental to the transportation of property. 'The paramount purpose of the regulation of the carriers is the protection of the public against ruinous carrier competition and such possible attendant evils as improperly maintained equipment, inadequate insurance, and poor service.' [Citation.] Particular P.U.C. regulations must be read in light of this broad mandate to protect the public.

" . . . . . . . . . . . . . . . . . . . . . . . . .

"The language used by the general order supports the conclusion that all vehicles used in the carrier's business are included in the mandatory insurance coverage. The 'service' performed by the carrier is transportation of property. The phrase 'transportation of property' is broadly construed both by the Public Utilities Code and by P.U.C. decisions. It includes 'every service in connection with or incidental to the transportation of property . . . .' (Pub. Util. Code, § 209.)" (30 Cal.3d at pp. 233-234.)

 Here, the Mabry Truck was used in the conduct of the Ayalas' business. That is to say, the Ayalas employed the Mabry Truck to complete a haul in furtherance of their business. That subhaul constituted an operation requiring the issuance of a P.U.C. permit, and was conducted under the P.U.C. permit issued to the Ayalas. As such, the Mabry Truck was a covered vehicle under the Williamsburg policy by reason of the P.U.C. endorsement, and Mabry and Musial were additional insureds under the Williamsburg policy.

Williamsburg argues that "An extension of coverage to the Condor Insureds seems to be in direct contradiction to the express purpose of the PUC Endorsement. As stated in *Argonaut* and *Samson*, the applicable statutes and rules were to be applied to 'financially irresponsible owners' because they are the ones who can ensure proper maintenance of the vehicle and its safe operation. Ms. Mabry was the owner of the vehicle in question, the individual who had control over the vehicle's use and operation. The Williamsburg insureds had no connection whatsoever with the vehicle or its operation."

This contention lacks merit. Contrary to Williamsburg's statement, its insured had a direct connection with the vehicle and its operation; in fact, Ayala Brothers Trucking's business depended on it. It is of equal importance to the primary hauler of goods and the subhauler to whom it contracts work that the vehicles used in the haul are properly maintained and safely

operated. Indeed, adoption of Williamsburg's reasoning would lead to the conclusion that, had the Mabry Truck not been insured by its owner, the injured victim Leamon would be left without recourse to any insurance coverage whatsoever. This is clearly contrary to the legislative purpose in mandating minimum liability coverage for common carriers which use the public highways in the conduct of their business. (See *Samson v. Transamerica, supra*, 30 Cal.3d 220; *Argonaut Ins. Co. v. Transport Indem. Co., supra*, 6 Cal.3d 496; *Paul Masson Co. v. Colonial Ins. Co.* (1971) 14 Cal.App.3d 265 [92 Cal.Rptr. 463].)

In sum, the trial court properly found that the Condor Insureds were "insureds" under the Williamsburg policy as well.

2. *Was Williamsburg's liability under the policy satisfied by reason of Condor's payment, on behalf of its insured, of the P.U.C. mandatory minimum of $250,000?*

█ Williamsburg maintained below, and the trial court agreed, that even if Mabry and Musial were insureds under the Williamsburg policy, Williamsburg was relieved of its obligations thereunder since the purposes of the P.U.C. endorsement were fulfilled by Condor's payment of $250,000 on behalf of its insureds, relying on *Paul Masson Co. v. Colonial Ins. Co., supra*, 14 Cal.App.3d 265. We do not believe, however, that *Paul Masson* can be read to support this conclusion. Moreover, this precise issue was considered and settled over 45 years ago in *Giordano v. American Fidelity & Cas. Co.* (1950) 97 Cal.App.2d 309 [217 P.2d 444].

In *Giordano*, a truck leased to and operated by A.M. Hendricks under authority of a permit issued by the Railroad Commission was involved in an accident, injuring plaintiffs Mr. and Mrs. Giordano. The plaintiffs sued Hendricks as well as the truck owner and the truck driver, and obtained a $50,000 judgment in favor of Mr. Giordano and a $10,000 judgment in favor of his wife. $10,000 was paid towards satisfaction of the judgments on behalf of the truck's owner and driver, $5,000 of which was applied to Mr. Giordano and $5,000 to Mrs. Giordano.

The Giordanos then sued A.M. Hendricks's insurer, American Fidelity, for $10,000, representing the $5,000 per person policy limits of Hendricks's liability policy. American Fidelity contested liability on the ground that the truck involved in the accident was not covered by its policy. The policy included, however, a "Form T & S 391" endorsement, which, like the P.U.C. endorsement applicable here, mandated minimum insurance coverage and provided "that the insurer agreed to pay any final judgment against the

insured for bodily injury to third persons arising out of the use of any vehicle operated under authority of the Highway Carriers Act, as amended, even though such vehicle was not described in the policy. . . ." (97 Cal.App.2d at p. 310.)

The appellate court framed American Fidelity's argument thus: The insurer had no liability under the endorsement "since the purpose of 'Form T & S 391' was otherwise fully accomplished when $5,000 was paid to each of the [Giordanos]. It is argued that the purpose of this endorsement was merely to meet the requirements of Sections 5 and 6 of the Highway Carriers Act; that these sections only required protection for third persons up to $5,000 for one and $10,000 for two persons; that the owner of the truck involved in the accident had insured it with another company and thus fully met the requirements of the act and the endorsement; that the endorsement itself provides that it shall have no effect with respect to any liability in excess of $5,000 and $10,000 limits; that this refers to the assured's liability, which has already been met to that extent; and that [American Fidelity] has thus been relieved from any further liability." (97 Cal.App.2d at pp. 311-312.)

The Court of Appeal unequivocally rejected the foregoing argument, which is the same argument which Williamsburg urges here. The court stated that "The truck in question was being operated by A.M. Hendricks under her permit as a carrier; [American Fidelity] issued this policy to her for the direct purpose of furnishing the protection to third persons which was required by the statute; and [American Fidelity] agreed to be bound to that extent, as required by the Commission and as set forth in the endorsement. It would be unreasonable to hold that this agreement was intended, either by the law or by the endorsement, to be a conditional obligation of the insurer to pay only so much of $5,000 or of $10,000 as a judgment creditor or creditors were unable to collect elsewhere. The insurer's contractual liability, while limited to the amounts named, was not limited by whether or not the insured had other assets which could be reached or whether or not someone else might or should pay something upon the judgment so long as an amount equal to that owed by the insurer was still unpaid on the judgment." (97 Cal.App.2d at p. 312; see also *Home Indem. Co.* v. *King* (1983) 34 Cal.3d 803 [195 Cal.Rptr. 686, 670 P.2d 340]; *Employers Ins. of Wausau* v. *Ohio Casualty Co.* (1983) 146 Cal.App.3d 871 [194 Cal.Rptr. 535].)

As noted, the trial court below relied on *Paul Masson Co.* v. *Colonial Ins. Co., supra,* 14 Cal.App.3d 265 to reach a conclusion contrary to that dictated by *Giordano.* In *Paul Masson,* the subhauler of goods, insured by Colonial,

was involved in an accident in which the subhauler's employee was injured while unloading bottles from a vehicle. The subhauler's policy was deemed to provide primary coverage for the claim, while the primary hauler's policy, issued by Imperial, was deemed to provide excess insurance coverage by reason of the "other insurance" provision of that policy. Colonial argued that Imperial's coverage pursuant to the P.U.C. endorsement was primary rather than excess. The court disagreed: "The terms of the endorsement were drafted 'to assure compliance' with General Order No. 100B, and for no other purpose. The evident purpose of the order was to make certain that no vehicle was operating under Public Utilities Commission license without a minimum amount of liability insurance. Such coverage would normally be provided by the owner of such a vehicle, under a standard form of owner's policy. The sweeping language of the endorsement, attached to the permittee's policy, was 'to assure compliance' in the event no owner's policy applied. [¶] In the case at bench, the subhauler, Machado, did have more than adequate liability coverage to comply with the requirements of General Order No. 100B, and hence the endorsement on the [permit holder's] policy did not apply. [¶] In the case at bench we have an owner's policy affording primary coverage of more than the limit required by the P.U.C. Order. Under these circumstances the Public Utilities Commission Endorsement in the non-owner's policy does not *ipso facto* make that coverage primary over the owner's policy, which is adequate to give the coverage now required by the Commission's Order." (*Id.*, at pp. 273-274.)

Williamsburg relies on the foregoing language to argue that, because the rationale of providing minimum insurance coverage had been met by Condor's payment of the P.U.C. mandated minimum amount of $250,000, it has no liability under the P.U.C. endorsement. Such a conclusion is not warranted. The *Paul Masson* court simply stated that, where the injured person may be fully compensated by the subhauler's *primary* insurance coverage, there is no need to resort to the *excess* coverage provided by the primary hauler's P.U.C. endorsement. This statement is not controversial. Rather, it is a simple acknowledgment of the basic rule that excess coverage does not apply unless and until primary coverage is exhausted.

However, Williamsburg's contention that its liability under the excess policy simply evaporates since the subhauler had in place primary coverage with limits mandated by the P.U.C. represents a radical departure from insurance law and is wholly unsupported by any authority cited to this court. To the contrary, the cases consistently hold that, once it is established that an insurer is on the risk, the policy benefits are available to compensate the injured victim (subject to the terms of the insurance contract) even if the primary coverage meets the mandatory P.U.C. insurance requirements. (See,

e.g., *Home Indem. Co.* v. *King, supra,* 34 Cal.3d 803; *Employers Ins. of Wausau* v. *Ohio Casualty Co., supra,* 146 Cal.App.3d 871; *Giordano* v. *American Fidelity & Cas. Co., supra,* 97 Cal.App.2d 309; see also *Transamerica Ins. Co.* v. *Tab Transportation, Inc., supra,* 12 Cal.4th 389.)

In sum, we hold that liability insurance coverage provided by the P.U.C. endorsement is excess and additional to any primary insurance coverage. Consequently, the trial court erred in ruling that Williamsburg was excused from its obligations to Mabry and Musial by reason of Condor's payment on behalf of its insureds of the $250,000 limits of the P.U.C. endorsement.

### 3. *Demurrer to declaratory relief complaint*

 For the reasons set forth above, we conclude that the trial court erred in sustaining Williamsburg's demurrer to Condor's complaint. This case remains, however, in an unusual procedural posture. Condor sought declaratory relief against both Williamsburg and its insureds, Mabry and Musial. "It is the general rule that in an action for declaratory relief the complaint is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a contract and requests that the rights and duties be adjudged. . . . If these requirements are met, the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration." (*Bennett* v. *Hibernia Bank* (1956) 47 Cal.2d 540, 549 [305 P.2d 20]; see also *Sullivan* v. *San Francisco Art Assn.* (1950) 101 Cal.App.2d 449, 455 [225 P.2d 993] ["For that is what a declaratory relief action is about, to determine and declare the respective rights and duties of the parties, *at the end,* not at the beginning, of the inquiry." (Italics in original.).].) Consequently, even had the trial court's analysis of the controverted legal issues been correct, the proper procedure would have been to make the declaration in favor of Williamsburg.

Whether or not Condor can now state a cause of action against Williamsburg for declaratory relief is, however, uncertain. In its complaint, Condor alleged that it "fully and completely satisfied all of its obligations under the terms of the Condor policy" issued to Mabry, and requested a declaration to that effect.[4] Condor also alleged that Williamsburg had an obligation to Mabry and Musial pursuant to the terms of the Ayalas' policy, and requested a declaration to that effect. As to this latter remedy, however,

---

[4]Because only the judgment in favor of Williamsburg is currently before the court on appeal, we do not know if the trial court in fact rendered a declaratory judgment with respect to this issue.

the facts alleged in the complaint do not establish the requisites of a cause of action for declaratory relief.

Code of Civil Procedure section 1060 provides: "Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. . . ." Taking the facts alleged in the complaint as true, Condor has fully and completely satisfied its obligations to its insureds under the terms of the automobile liability policy which it issued to Mabry. Consequently, Condor has no interest in any rights which Mabry and Musial may have pursuant to the terms of the Williamsburg policy, and no actual, present controversy exists between Condor and Williamsburg which would give rise to the requested relief.

In their briefs, however, the parties allude to facts which might establish the existence of an actual controversy subject to declaratory relief. Consequently, Condor is entitled to leave to amend its complaint to attempt to state a cause of action against Williamsburg. (*Lopez* v. *City of Oxnard* (1989) 207 Cal.App.3d 1, 7 [254 Cal.Rptr. 556].)

### DISPOSITION

The judgment is reversed. The trial court is ordered to grant Condor leave to amend its complaint. Each party is to bear its own costs on appeal.

Grignon, Acting P. J., and Godoy Perez, J., concurred.

On October 10, 1996, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied December 11, 1996.