Filed 8/26/16  Morales v. County of Orange CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LUIS ALBERTO MORALES,<br><br>　　Plaintiff and Appellant,<br><br>　　　　v.<br><br>COUNTY OF ORANGE et al.,<br><br>　　Defendants and Respondents. | G052109<br><br>(Super. Ct. No. 30-2013-00683764)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Linda S. Marks, Judge.  Affirmed.

O'Neil & Matusek and Henry John Matusek II for Plaintiff and Appellant.

Gutierrez, Preciado & House and Calvin House for Defendants and Respondents.

## I.  INTRODUCTION

Plaintiff Alberto Morales spent an extra month in incarceration beyond what his plea bargain called for.  He then sued the Orange County sheriff, her head jailer, and the county, for that month.  Because the error was not theirs, but that of a court clerk, we affirm the summary judgment those defendants have obtained.

## II.  FACTS

Morales was arrested and charged with receiving stolen property (Pen. Code, § 496D[1]) and participation in a criminal street gang aka "street terrorism" (§ 186.22, subdivision (a)); he was also subject to a sentencing enhancement for committing a crime to benefit a criminal street gang (§ 186.22, subdivision (b)), usually called a gang enhancement.  He made a plea deal with the prosecutor.

The deal provided Morales would be sentenced to the middle term of two years in state prison, and one year, to run concurrently, on the street terrorism count, reduced to a misdemeanor.  As to the gang enhancement, a low term enhancement of two years was imposed and then stricken, so in effect there was no gang enhancement.  The upshot of all this, as Morales' counsel told the court in presenting it, was that he would get a two-year sentence with certain credits.

Morales was sentenced pursuant to the plea bargain on May 11, 2012, and was released from incarceration by February 8, 2013.  There is no point here in explaining how the various credits reduced two years to about 9 months but he should have gotten out about a month earlier.

The bargain in open court contemplated one year on the street terrorism count, and the transcript of the oral proceedings says nothing about the one year being served in county jail as distinct from state prison.  But the written sentencing order on Orange County Superior Court letterhead dated May 14, 2012, yclept "Notice to Sheriff,"

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

reflected something else entirely as to the now-misdemeanor street terrorism count. It provided that Morales was to serve two years in county jail for the street terrorism count.[2] The "Notice to Sheriff" resembled a typical Orange County Superior Court minute order, and like such minute orders, was not signed by the clerk or the judge.

The order, sent to the sheriff's office, prompted the office to send, on June 5, 2012, a request to the state department of corrections (called a "detainer") to have Morales brought back to Orange County jail when he would otherwise have been released from state custody. The sheriff's office had calculated that Morales still had time left to serve on his sentence.[3]

He arrived back in Orange County on January 9, 2013. He suspected he was being incarcerated longer than his plea bargain, and was able to contact the Attorney General's office on February 8, 2013. That very day, the Attorney General's office contacted the court, which then issued a notice to the sheriff's office to release Morales immediately. The sheriff's office did so.

---

[2] Here is the substantive part of the sentencing order, verbatim:
"Charging Doc:   Original Information
"CNT OL CHARGE                        CNT OL CHARGE
"    1   F  496D(a) PC                     2   M   186.22(a) PC
"Count 2 186.22(a) PC, reduced to misdemeanor pursuant to Penal Code 17(b) at request of People.
"No legal cause why judgment should not be pronounced and defendant having been convicted of 496d(a) PC as charged in count 1, defendant is sentenced to STATE PRISON for Middle term of 2 Year(s).
"Court finds enhancement pursuant to 186.22(b)(1) PC, sequence #1 charged and found true in count 1.  Court imposes term of 2 Year(s).  Punishment Stricken.
"As to count(s) 2, defendant to serve 2 Year(s).
"2 year(s) Orange County Jail sentence imposed on Count – 2 to run concurrent to the 2 year(s) State Prison sentence imposed on Count 1.
"Defendant may serve jail sentence at any state or local penal institution.
"Total term to be served in State Prison is 2 Year(s).
"Credit for time served:  175 actual, 87 conduct, totaling 262 days pursuant to Penal Code 4019(b)(2) and (c)(2)."

[3] The Orange County Sheriff's Department has a different approach to calculating credits than the state prison system, a fact admitted in the sheriff's own papers moving for summary judgment.  The discrepancy was a minor theme of Morales' argument at the trial level and is reiterated on appeal.  However the difference in calculation turns out to be only relevant in *this* appeal to show why the sheriff's office might have concluded a two-year jail sentence would end later than a release from state prison.

3

In October 2013, Morales brought this action against the sheriff and the county as her employer for common law false imprisonment and violation of his civil rights under section 52.1 of the Civil Code against the sheriff.[4]  In granting the defendants' summary judgment motion the trial court relied mainly on *Vallindras v. Massachusetts Etc. Ins. Co.* (1954) 42 Cal.2d 149, 154 (*Vallindras*).

## III. DISCUSSION

The contours of a sheriff's liability for common law false imprisonment are fairly well established, and basically turn on whether the sheriff knew or should have known a prisoner was entitled to release.  (Cf. *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710, 714 [sheriff liable for failure to release after receiving direct order from court that the charges against the plaintiff had been dismissed]; *Whirl v. Kern* (5th Cir. 1968) 407 F.2d 781, 785-786 [sheriff could be liable where he received actual notice of dismissal] with *Lopez v. City of Oxnard* (1989) 207 Cal.App.3d 1, 8-9 [sheriff not liable where arrest warrant was regular on its face and adequately described plaintiff (even if plaintiff turned out to be wrong man)] and *Vallindras, supra,* 42 Cal.2d at pp. 154-156 [sheriff not liable for executing order to take plaintiff into custody for contempt of court even though order turned out ultimately to be void].)

The basic principle is that the law does not expect the sheriff to be a *judicial* officer, passing like an appellate court on the correctness of an otherwise regular, apparently valid court order.  The *Vallandras* court made that point most clear, in a passage on which the trial court also relied:

---

[4]  For a comparison between Civil Code section 52.1 and the more common federal 42 U.S.C. section 1983, see *Venegas v. County of Los Angeles* (2007) 153 Cal.App.4th 1230, 1242-1247.  One big difference is that the state statute reaches private actors.  Subdivision (b) of the Civil Code section 52.1 statute provides:  "(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a)."

"It is [the sheriff's] duty to execute the orders of the court unless they are patently irregular and void. [¶] In determining whether process and orders are 'regular on their face' so far as the liability of such an officer is concerned, the following statement from *Aetna Ins. Co. v. Blumenthal* (1943), 129 Conn. 545, 553 [29 A.2d 751, 754] is pertinent: 'When we speak of process "valid on its face," in considering whether it is sufficient to protect an officer, we do not mean that its validity is to be determined upon the basis of scrutiny by a trained legal mind; nor is it to be judged in the light of facts outside its provisions which the officer may know. [Citations.] Unless there is a clear absence of jurisdiction on the part of the court or magistrate issuing the process, it is sufficient if upon its face it appears to be valid in the judgment of an ordinarily intelligent and informed layman. To hold otherwise would mean that an officer must often act at his peril or delay until he has had an opportunity to search out legal niceties of procedure and, as said in *Anderson v. Dewey* [(1917), 91 Conn. 510, 514 [100 A. 99]] . . . "A result subjecting him to constant danger of liability would be an intolerable hardship to him, and inevitably detract from the prompt and efficient performance of his public duty."'" (*Vallindras, supra*, 42 Cal.2d at p. 154.)

The core proposition which underlies Morales' suit is that the sheriff should have spotted the court's error in imposing a two-year sentence for a misdemeanor. But that is a higher standard than the Supreme Court contemplated in importing the ordinarily informed and intelligent layperson standard from Connecticut. We dare say there are plenty of law school graduates who would not have spotted the error in the court's notice to sheriff.

Moreover, we should also note that the sheriff's office presented uncontradicted evidence in its motion for summary judgment that after the Orange County Superior Court began issuing electronic commitment orders, the previous practice of clerks signing them was dispensed with. The sheriff's office would thus not have had any reason to suspect the document of May 14, 2014, was in any way irregular. And we

5

note that Morales cites us to no authority which imposes a *requirement* that a valid sentencing order must have a clerk's signature. Indeed, courts sometimes take very drastic action – terminating parental rights, for example – in unsigned minute orders indistinguishable in this regard from the notice to the sheriff here.

In regard to the claim under Civil Code section 52.1, the common law analysis is the same: since the sheriff was entitled to rely on the notice received from the court, she did not violate Morales' civil rights. And besides the common law, the judgment on the civil rights claim is supported by the plain text of section 262.1 of the Code of Civil Procedure. That statute provides, simply: "A sheriff or other ministerial officer is justified in the execution of, and shall execute, all process and orders regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued."

The text of Code of Civil Procedure section 262.1 is inescapable. It not only refers to process, but orders, and it refers to the execution of orders, such as sentencing orders. We have already explained that this sentencing order was regular on its face and issued by competent authority. Not surprisingly, our Supreme Court in *Vallindras, supra*, 42 Cal.2d at page 153 treated Code of Civil Procedure section 262.1 as an applicable immunity statute where a sheriff executed an order regular on its face requiring the imprisonment of the plaintiff on contempt. (See *id*. at pp. 153-154.)

Finally, nothing in section 1215 alters our analysis. Section 1215 imposes a duty on "the proper officer," in cases of judgments of imprisonment, to detain the defendant until the judgment has been "complied with." Nothing in section 1215, however, imposes on such officers the power to alter or refuse to comply with what a

6

court order, regular on its face, otherwise provides. And nothing in it makes a sheriff responsible for a court clerk's error.[5]

Accordingly, we must conclude the summary judgment in favor of the sheriff and her head jailer was correctly granted. They were not responsible the extra period of incarceration suffered by Morales. And because any liability on the county's part is based on the sheriff's conduct, it was also entitled to summary judgment.

## IV. DISPOSITION

The judgment is affirmed. Respondents shall collect their costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOORE, J.

FYBEL, J.

---

[5] Here is the entirety of the statute: "If the judgment is for imprisonment, or a fine and imprisonment until it be paid, the defendant must forthwith be committed to the custody of the proper officer and by him or her detained until the judgment is complied with. Where, however, the court has suspended sentence, or where, after imposing sentence, the court has suspended the execution thereof and placed the defendant on probation, as provided in Section 1203, the defendant, if over the age of 16 years, shall be placed under the care and supervision of the probation officer of the court committing him or her, until the expiration of the period of probation and the compliance with the terms and conditions of the sentence, or of the suspension thereof. Where, however, the probation has been terminated as provided in Section 1203, and the suspension of the sentence, or of the execution revoked, and the judgment pronounced, the defendant shall be committed to the custody of the proper officer and be detained until the judgment be complied with."