[Civ. No. 49509. Second Dist., Div. Two. Feb. 1, 1977.]

NAN BELTRAM et al., Petitioners, v.
THE APPELLATE DEPARTMENT OF THE SUPERIOR COURT
OF LOS ANGELES COUNTY, Respondent;
CITY OF LOS ANGELES et al., Real Parties in Interest.

COUNSEL

Hugh R. Manes for Petitioners.

Fred Okrand, Jill Jakes, Mark D. Rosenbaum and Gary D. Sowards as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Burt Pines, City Attorney, John T. Neville, Assistant City Attorney, and Daniel U. Smith, Deputy City Attorney, for Real Parties in Interest.

OPINION

**FLEMING, Acting P. J.**—This proceeding in certiorari presents three questions. ■ The first is whether a notice of appeal filed in the name of the City of Los Angeles includes a named defendant employee of the city. We conclude it does. ■ The second involves the interpretation of Penal Code section 825 dealing with the right of a prisoner to see an attorney, and the penalty for refusing to allow an attorney to visit the prisoner when proper application has been made therefor. ■ The third is whether the attorneys themselves have a cause of action under Penal Code section 825.

Petitioner Nan Beltram was arrested with two others (Pryor and Hertz, who are not involved in this proceeding) on 1 March 1972, for interfering with a meeting of the Board of Trustees of the Los Angeles Community College District. On 2 August 1972, Beltram, Pryor, and Hertz filed an action in the Municipal Court, Los Angeles Judicial District, which, among other things, alleged that plaintiffs had been deprived of their rights as guaranteed by Penal Code section 825. The city attorney demanded an undertaking for costs pursuant to Government Code section 947, subdivision (a). Beltram filed the undertaking 2 February 1973. The other two plaintiffs filed a dismissal 13 February 1973.

A separate action had also been filed in the municipal court by Ernest Aubry, and Robert Mundy, attorneys, alleging, among other things, they had been deprived of the right to visit their clients in violation of Penal Code section 825. Aubry and Mundy, who were representing petitioner in an action entitled Pryor, et al. v. Los Angeles Community College

District, had been at the meeting when petition was arrested, and had followed her to Rampart Police Station.

The Aubry action (855951) was consolidated with the Beltram action (835201) by stipulation filed 2 October 1974. Both actions named the City of Los Angeles and Police Sergeant Vernon C. Dossey as defendants. A five-day jury trial resulted in verdicts against the City of Los Angeles and Vernon C. Dossey of $500 to Nan Beltram, $1,500 to Robert Mundy, and $1,000 to Ernest Aubry. The reason for the awards to the attorneys was that they each had more than one client at the time they were prevented from seeing their clients.

On 11 March 1975, defendant City of Los Angeles filed a timely motion for new trial or, in the alternative, for judgment notwithstanding the verdict. No such motion was filed for Sergeant Dossey. The motions were denied 9 April 1975. On 22 April 1975, the City of Los Angeles filed a timely notice of appeal to the superior court, appellate department. Notice of appeal was not, however, filed for Sergeant Dossey.

More than seven months after entry of judgment, the City of Los Angeles noticed a motion "To Amend Notice of Appeal." On 21 October 1975, the appellate department of the superior court granted the motion to amend the notice of appeal to add the name of Vernon C. Dossey.

An engrossed settled statement was filed 16 January 1976, and the appellate department ultimately filed its memorandum opinion and judgment 12 July 1976, holding that since Nan Beltram had merely asked to see "an attorney" and failed to specify such attorney by name, there was no violation of Penal Code section 825 either as to her or as to the attorneys.

I

We first consider the question whether the appellate department of the superior court exceeded its jurisdiction in permitting the name of the employee Vernon C. Dossey to be added to the City of Los Angeles' notice of appeal. The general rule is that although failure to file a notice of appeal is a jurisdictional defect that cannot be remedied, once a notice is filed it is to be construed liberally in favor of its sufficiency. (See Cal. Rules of Court, rule 121(a) (cf. rule 1(a) to the same effect); discussion in 6 Witkin, Cal. Procedure (2d ed. 1971) pt. I, § 336, at p. 4315

(referring to the rule of liberal construction as a "formidable array of authorities giving effect to all sorts of imperfect designations").) Among the cases which have permitted changes in the designation of parties in a notice of appeal, we note as particularly in point *Boynton* v. *McKales* (1956) 139 Cal.App.2d 777, 787-788 [294 P.2d 733], wherein plaintiff appealed an order that granted a new trial as to both the employer and the employee defendants. The notice of appeal referred only to the order granting a new trial for the employee. The court held the notice of appeal good for the employer as well, pointing out that the misdescription of the order in the notice of appeal could not possibly have prejudiced defendants since they must have understood that plaintiff would not appeal the new trial order as to the employee only. Likewise in *Girard* v. *Monrovia City School Dist.* (1953) 121 Cal.App.2d 737, 739 [264 P.2d 115], separate judgments had been entered in favor of each defendant, and plaintiff's notice of appeal referred to the judgment in favor of defendants and cited only one of such judgments; the court in the absence of any demonstrated prejudice to defendants construed the notice of appeal as referring to all defendants. The gist of the foregoing cases and many others cited in Witkin, *supra*, is that the notice of appeal will be liberally construed unless respondent is prejudiced or misled by its defects.

In this case, the original notice of appeal named only the City of Los Angeles. Any liability of the City of Los Angeles to plaintiffs is wholly derivative from the liability of its employee, Vernon C. Dossey, under Penal Code section 825. The issues as to the city and its employee are identical. Therefore the inadvertent omission of the employee's name from the notice of appeal cannot have prejudiced or misled plaintiffs or in any way affected their preparation for the appeal.

The question is somewhat analogous to the rule that permits an amendment to a complaint after the statute of limitations has run to relate back to the original complaint, even though the cause of action may be changed (*Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 600 [15 Cal.Rptr. 817, 364 P.2d 681]), or even entirely new parties added (*Garrett* v. *Crown Coach Corp.* (1968) 259 Cal.App.2d 647 [66 Cal.Rptr. 590]), provided that the original and the amended complaint both relate to the same factual nexus. (See discussion in 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 1080, pp. 2656-2658, § 1082, pp. 2661-2662.) With regard to both situations—the amendment of a complaint or the amendment of a notice of appeal—the courts adopt a rule of liberal construction in a situation where no one is misled or prejudiced, in order to further the policy of hearing legal

disputes on their merits and avoid a windfall for one party as the result of another's technical procedural mistake. In accordance with the foregoing rules of construction we hold the notice of appeal good for both the City of Los Angeles and Vernon C. Dossey.

## II

■ Turning next to the interpretation of Penal Code section 825,[1] the record reflects that petitioner repeatedly demanded to see "an attorney." The appellate department was of the opinion that a request pursuant to Penal Code section 825 must designate a specific attorney by name. It was further of opinion that petitioner's action may have involved a violation of Penal Code section 851.5,[2] but not of Penal Code section 825.

The question of the form in which an attorney is requested and the question who is "the party aggrieved" under the statute are matters of first impression.

■ The city attorney contends that petitioner had no right to see an attorney at Rampart Station because booking was not completed until after petitioner was transferred to Sybil Brand Institute for Women. That question has been dealt with in *People* v. *Kingston* (1963) 216 Cal.App.2d Supp. 879 [31 Cal.Rptr. 450]. The statute does not require that booking be completed.

■ In the present case the facts are clear that shortly after petitioner arrived at the Rampart Station, the attorneys who were representing her in her original civil action against the trustees of the community college district were in the station, identified themselves, and asked to see their client, Beltram, while she was requesting to see "an attorney." It is a mere word game to say that petitioner can see a lawyer if she says "I want to see Mr. Aubry, an attorney at law licensed to practice in the

[1]The pertinent portion of Penal Code section 825 reads as follows: "After such arrest, any attorney at law entitled to practice in the courts of record of California, may, at the request of the prisoner or any relative of such prisoner; visit the person so arrested. Any officer having charge of the prisoner so arrested who willfully refuses or neglects to allow such attorney to visit a prisoner is guilty of a misdemeanor. Any officer having a prisoner in charge, who refuses to allow any attorney to visit the prisoner when proper application is made therefor, shall forfeit and pay to the party aggrieved the sum of five hundred dollars ($500), to be recovered by action in any court of competent jurisdiction."

[2]Granting any arresting person the right to make at least two telephone calls, and making it a misdemeanor willfully to deprive an arrested person of such right.

courts of record of California," but cannot see a lawyer if she says "I want to see an attorney," when the facts indicate that there was no ambiguity as to what attorney was meant, and that the attorneys were physically present in the station at the time of the request and were attempting to see their clients. The appellate department's memorandum opinion expressed concern that it would be unfair to impose civil liability on a jailor for refusing to honor a "generalized request for a lawyer" when the lawyer is not actually retained or in prior communication with the prisoner in respect to the pending criminal charges. (Memo. opn. p. 5.) It is, however, a criminal act for a jailor to refuse permission to telephone a lawyer—any lawyer—under Penal Code section 851.5, and indeed the opinion concluded from the evidence here that the jailors violated plaintiff's rights under that statute. We see no reason why greater proof should be required under the civil liability statute (§ 825) than under section 851.5.

Clearly section 825 does not require a jailor in response to a general request for an attorney to go out in the streets and locate one; but it cannot reasonably be said that he may with impunity refuse to honor a request for an attorney when the prisoner has an attorney who is representing her on other charges present in the jailhouse demanding to see his client. The absence of a particularized request for that attorney amounts to a "frozen formalism" at best (see *People* v. *Dorado* (1965) 62 Cal.2d 338, 357 [42 Cal.Rptr. 169, 398 P.2d 361]). (See also, *People* v. *Stroble* (1951) 36 Cal.2d 615, 625 [226 P.2d 330].) We conclude under the circumstances of this case that petitioner had made "proper application" for the right to visit with her attorney under Penal Code section 825, and that defendants denied her that right.

## III

Finally, we turn to the question who is the *party aggrieved* entitled to recover $500 damages under Penal Code section 825. The last sentence of section 825 (*ante,* fn. 1) is ambiguous as to whether the prisoner, the attorney, or both are entitled to the remedy, and we have been unable to find any legislative history that sheds light on the matter, nor any holdings on the question in other jurisdictions. Accordingly we must resolve the question under generally applicable principles. Clearly the statute is intended to protect the right of the accused to confer with counsel. The right of the prisoner to consultations with his attorney is a corollary of the constitutional right to be represented by counsel. (*In re*

*Qualls* (1943) 58 Cal.App.2d 330, 331 [136 P.2d 341].) The historical development of that right in Anglo-Saxon jurisprudence has focused solely on the right of the person who is criminally accused to have counsel, not on any right in the attorney to have access to his client. (For historical analysis see *An Historical Argument for the Right to Counsel During Police Interrogation* (1964) 73 Yale L.Rev. 1000.) All general treatises on the subject are phrased in terms of the right of the accused. (E.g., "It is also the right of an arrested person to be permitted, without unnecessary delay, to contact an attorney and to consult with him." (6A C.J.S., Arrest, § 62, pp. 139-140, fn. 73.) All cases refer to the right of the accused to call an attorney, not to any right in the attorney to advise his client; see e.g., *State* v. *Wheeler* (1958) 249 N.C. 187 [105 S.E.2d 615, 620]; *State* v. *Hill* (1971) 277 N.C. 547 [178 S.E.2d 462, 465-466]; *Siegwald* v. *Curry* (1974) 40 Ohio App.2d 313 [69 Ohio Ops.2d 293, 319 N.E.2d 381, 388]; *People* v. *Gursey* (1968) 22 N.Y.2d 224 [292 N.Y.S.2d 416, 418-419, 239 N.E.2d 351]; *City of Tacoma* v. *Heater* (1966) 67 Wn.2d 733 [409 P.2d 867, 872].

In light of the foregoing authorities we find no basis in the ambiguous wording of section 825 for the assumption that the Legislature intended anything so novel as the creation of a cause of action in an attorney for conduct that prevents him from seeing his client. Rather, the statute was enacted to protect the historic right of the accused to have counsel, and created in the prisoner—the *party aggrieved*—a cause of action against one who infringes upon his right. Civil remedies such as that provided by section 825 are designed to assist in enforcing the public policy against police illegality by providing an effective deterrent even in the absence of the state's willingness to bring criminal sanctions against the violator. (See Foote, *Tort Remedies for Police Violations of Individual Rights* (1955) 39 Minn.L.Rev. 493, 497-499.) This policy is effectuated by granting a remedy in the accused. A holding that both the prisoner and an unlimited number of his attorneys are *party aggrieved* under the statute would result in double or triple recovery against the jailor for the same wrongful act, a result we do not think may fairly be inferred from the statute as worded.

The writ of review having been granted, the judgment of the superior court, appellate department is annulled. (Code Civ. Proc., § 1075.) The

judgment of the municipal court is affirmed as to plaintiff Nan Beltram and reversed as to Ernest Aubry and Robert Mundy. Plaintiff Beltram will recover her costs, and other parties will bear their own costs.

Compton, J., and Beach, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied March 31, 1977.