Filed 4/17/13  Brown v. Regents CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SHIRLEY BROWN, et al., | B235791 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. SC109224) |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John L. Segal, Judge.  Reversed.

The Walls-Fox Firm, Larry Dean Walls and Tiffiny Walls for Plaintiffs and Appellants.

Baker, Keener & Nahra, Brenda K. Benson; Greines, Martin, Stein & Richland, Martin Stein and Lillie Hsu for Defendant and Respondent.

_____

The wife and children of Cleveland Brown sued the Regents of the University of California, alleging medical malpractice and wrongful death. The Regents obtained summary judgment, and the Brown family appeals. We reverse the summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Cleveland Brown died on September 11, 2009. His wife and children sued the Regents, alleging malpractice in the medical care provided to Brown between August 2008 and the date of his death. Specifically, the Brown family alleged that the Regents breached the duty "to assure the competence of its staff physicians and/or failed to exercise ordinary care under the doctrine of corporate hospital liability and the circumstances, to evaluate and to assure the quality of its medical staff and resultant medical care by its staff physicians, and breached its duty of selecting, reviewing, and periodically evaluating the competency of its staff physicians. This breach of the duty of careful selection, review, and periodic evaluation of the competency of its staff physicians created an unreasonable risk of harm to its patients." They alleged also that the Regents breached the duty "to guard against physicians' incompetence, and further breached their duty in that they failed to assure quality medical care by the lack of prudent selection, review, and continuing evaluation of the physicians who were granted staff privileges." Ultimately, the Browns alleged, between August 2008 and September 11, 2009, the Regents "failed to use due or reasonable care or skill in endeavoring to examine, care for, diagnose, perform surgery and treat decedent" for his medical conditions, resulting in his death on September 11, 2009.

The Regents moved for summary judgment. Their separate statement of undisputed material facts listed only two facts: "All of the care and treatment provided by this defendant's agents and employees, including Dr. David Austin, complied with the standard of care," and "No act or omission on the part of this defendant's agents and employees, including Dr. David Austin, caused, contributed or was a substantial factor in causing any harm to the plaintiffs or the death of decedent."

2

To support these statements of undisputed fact, the Regents relied exclusively upon the declaration of an expert witness, Colin Haggerty, M.D. Haggerty declared that he had reviewed the records of David Austin, M.D., Brown's family practice physician. These records included "his chart notes, lab studies, imaging reports, and diagnostic tests carried out by physicians who Dr. Austin consulted with relative to Mr. Brown." Based upon his review of these records, Haggerty concluded that "the care provided by defendant The Regents' agents and employees, including Dr. David Austin, to decedent Cleveland Brown was reasonable, appropriate, and complied with the applicable standard of care," and that no action or inaction by the Regents' agents or employees caused, contributed or was a substantial factor in causing harm to Brown.

To support these conclusions, Haggerty discussed the care provided by Austin from 2002 to March 2009. Beginning in 2002 Austin treated Brown for headaches, sinus problems, hypertension, and gastroesophageal reflux disease. This medical care, Haggerty declared, was reasonable and appropriate, as were the colonoscopies Austin ordered over the years. In late 2008 Brown reported abdominal pain, leading Austin to refer him immediately to a gastrointestinal specialist who performed an endoscopy and began treatment with antibiotics. The gastrointestinal specialist followed Brown's symptoms at this time and then ordered an ultrasound because Brown reported more discomfort. Haggerty considered this step reasonable and appropriate.

The ultrasound performed on March 26, 2009, revealed a pancreatic mass, and Austin ordered a CT scan of the pancreas that was performed the following day. Haggerty described the next events: "The patient thereafter was seen immediately by other UCLA affiliated physicians who then provided him with chemotherapy as well as pain relief (as his pancreatic tumor was found to be unresectable, i.e. not amenable to surgery due to the extent and location of the tumor)." Haggerty did not discuss the medical care received by Brown for the remaining six months of his life beyond this reference to further medical care given by UCLA-affiliated doctors. Moreover, Austin's records, on which Haggerty based his opinion that "the care and treatment provided by defendant The Regents' agents and employees, including that provided by Dr. Austin,

3

was reasonable, appropriate, and met the applicable standard of care," conclude in March 2009 and do not cover the remaining months of Brown's life.

The Brown family opposed the summary judgment motion with the declaration of another medical expert, Jeffrey I. Kurland, M.D., Ph.D. Kurland had reviewed different medical records; he provided an account of the final month of Brown's life and the medical treatment and procedures he received during that time. Kurland concluded that the Regents failed to provide sterile intravenous tubing and/or sterile intravenous solutions, leading to Brown contracting a hospital-born infection that contributed to and/or was a substantive factor in his death from sepsis.

The Regents submitted extensive evidentiary objections to the Kurland declaration, most significantly that the medical records upon which Kurland relied had not been authenticated and were therefore hearsay. The trial court found that the medical records had not been properly authenticated and that they therefore could not form the basis of the expert's opinion. The court concluded that Kurland's declaration, based on unauthenticated records and not on personal knowledge, "is not admissible" and sustained most of the Regents' evidentiary objections.

The trial court concluded that the Brown family had failed to carry its burden of demonstrating the existence of a triable issue of material fact on the issue of whether the Regents breached the standard of care, and granted summary judgment in the Regents' favor. Shirley Brown filed a notice of appeal.

## DISCUSSION

### I. Construction of the Notice of Appeal

Brown's widow Shirley Brown filed a notice of appeal from the summary judgment. Brown's children did not file notices of appeal, but the opening and reply briefs on appeal are in their name as well as Shirley Brown's. The Regents contend that Shirley Brown is the only cognizable appellant, and the Browns have requested that we permit them to amend the notice of appeal to include the Brown children.

4

The notice of appeal must be liberally construed, and it is sufficient if it identifies the particular judgment or order being appealed. (Cal. Rules of Court, rule 8.100 (a)(2).) In the absence of prejudice to the respondent, and particularly when the issues as to the appealing party and the omitted party are identical, courts have liberally construed an otherwise sufficient notice of appeal to include omitted appellants. (*Beltram v. Appellate Dept.* (1977) 66 Cal.App.3d 711, 715 [construing notice of appeal filed by city to also encompass the city employee whose liability was the basis of the city's liability]; *Cromwell v. Cummings* (1998) 65 Cal.App.4th Supp. 10, 15 [because there was no prejudice to the respondent, notice of appeal of sanctions award by plaintiffs was deemed to include an undesignated attorney who was found jointly and severally liable for sanctions]; *Boynton v. McKales* (1956) 139 Cal.App.2d 777, 787-788 [notice of appeal filed by employer construed to cover an employee as well where the defendants could not have been prejudiced, as they must have understood that plaintiff would not appeal the new trial order as to the employee only].) Here, neither in briefing or at oral argument did the Regents articulate any actual prejudice resulting from the liberal construction of the notice of appeal to include all the plaintiffs, and we cannot conceive of any possible prejudice to the respondents in light of the plaintiffs' identical litigation position in the trial court and their intent to raise the same appellate issues as Shirley Brown as manifested by their inclusion on the briefing on appeal. We therefore construe the notice of appeal to include Brown's children.

## II. Summary Judgment

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment begins with the burden of showing that there is no merit to a cause of action, and it satisfies this burden if it shows that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) In order to obtain a

5

summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . . Although he remains free to do so, the defendant need not himself conclusively negate any such element . . . ." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*).)

Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar*, *supra*, 25 Cal.4th at p. 849; Code Civ. Proc., § 437c, subd. (p)(2).) If the plaintiff does not make this showing, summary judgment in favor of the defendant is appropriate. If the plaintiff makes such a showing, summary judgment should be denied. On appeal, we review a grant of summary judgment de novo. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)

Here, the Regents' prima facie showing was insufficient to show that one or more elements of the plaintiffs' cause of action could not be established or that there was a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) The Regents' motion for summary judgment rested entirely on the opinion of expert witness Haggerty, but Haggerty had only reviewed medical records dating through March 2009, and only the records of one Regents' doctor whose care for Brown apparently ended months before Brown died. Because of the limited scope of the records reviewed by Haggerty, he was competent only to opine concerning the adequacy of a portion of the care provided by the Regents to Brown: Haggerty's declaration demonstrated only that the care provided or recorded by Austin through late March 2009 comported with the standard of care. The declaration was insufficient to demonstrate that there was no triable issue of material fact as to whether the care provided to Brown by other Regents' employees, and/or for the period from late March 2009 through September 11, 2009, complied with the standard of care. The Regents, therefore, failed to "show that the

6

plaintiff cannot establish at least one element of the cause of action" (*Aguilar*, *supra*, 25 Cal.4th at p. 853), and the summary judgment must be reversed.[1]

The Regents argue that their burden is limited to negating the existence of triable issues of fact on those issues raised by the pleadings, and that they have no obligation to refute liability on theoretical possibilities not articulated in the pleadings or on unintelligible allegations. (See, e.g., *Cochran v. Linn* (1984) 159 Cal.App.3d 245, 250; *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 382.) While we do not dispute this characterization of the moving party's obligations, the complaint here expressly and intelligibly alleged negligence in the medical care provided to Brown from August 2008 and September 11, 2009, resulting in Brown's death. To the extent the Regents wished to narrow or clarify the allegations of wrongdoing, they could have sought clarity through motion practice and/or discovery rather than seeking summary judgment based on an evidentiary showing that covered only a portion of the medical care provided to Brown and part of the time period placed at issue by the complaint.

## DISPOSITION

The summary judgment is reversed and the matter remanded to the trial court. Appellants shall recover their costs on appeal.

ZELON, J.

We concur:

PERLUSS, P. J.                    JACKSON, J.

[1] Our ruling that the summary judgment was improperly granted and must be reversed makes it unnecessary for us to consider the propriety of the trial court's rulings on the evidentiary objections to the Browns' evidence submitted in opposition to the summary judgment motion, the denial of the Browns' requested continuance, and the denial of their motion for reconsideration.