Filed 3/18/14  Spahi v. Stone CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| OMAR SPAHI et al., | B240611 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC445123) |
| RICHARD STONE et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert L. Hess, Judge.  Reversed and remanded.

Verdi Law Group and Alfred J. Verdi for Plaintiffs and Appellants.

Law Offices of Alan S. Gutman, Alan S. Gutman and John Juenger for Defendants and Respondents.

_____

Omar Spahi, individually and as trustee of the Occidental Trust and the Gelato Trust, Dorothea Schiro as trustee of the Penthouse Trust, John Spahi, Janet Fuladian, Siavosh Khajave as trustee of the KN Trust, Richard Houseman and Patrick Ambrose (collectively Spahis) sued Richard Stone, Isen Investments, Inc. and Stuart Isen (collectively Isens) for trade libel/disparagement of property and several other tort claims and for breach of contract. The trial court sustained the Isens' demurrers to the complaint without leave to amend and dismissed the action. We reverse. Although the demurrer was properly sustained without leave to amend as to the breach of contract cause of action, the Spahis adequately pleaded their various tort causes of action and are entitled to proceed against the Isens on those liability theories.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Spahis' Operative Fourth Amended Complaint*

The dispute underlying the Spahis' lawsuit relates to efforts to sell or lease units in a 317-unit, luxury, residential cooperative building in Santa Monica, commonly known as Ocean Towers, which is owned and managed by Ocean Towers Housing Corporation (OTHC). The Spahis own a number of units at Ocean Towers.

Believing the Isens were improperly attempting to exploit Omar Spahi's financial difficulties to obtain Ocean Tower units at artificially depressed prices, the Spahis sued the Isens in September 2010. Following several rounds of successful demurrers, which had focused primarily on the generality and vagueness of the Spahis' allegations, on September 23, 2011 the Spahis filed a fourth amended complaint asserting causes of action for trade libel/disparagement of property, defamation, interference with contract, interference with prospective economic advantage and breach of contract.

In this final iteration of their complaint the Spahis alleged Omar Spahi had filed a petition for protection under Chapter 11 of the Bankruptcy Code in December 2009. Upon learning of the bankruptcy petition the Isens and Dale Pearson[1] formed a

---

[1] The fourth amended complaint also named Pearson as a defendant. The Spahis' claims against Pearson were not dismissed, and he is not a party to this appeal.

"syndicate" to purchase the Spahis' Ocean Towers units at the lowest price possible. In pursuit of that objective and allegedly acting as co-conspirators and/or each other's agent, the Isens and Pearson made false and defamatory statements about the Spahis and their units to disrupt the Spahis' efforts to sell or lease their properties. Specifically, in paragraph 39 of the fourth amended complaint the Spahis alleged each of the Isen parties made the following false statements, "verbatim or in substance": The Spahis were thieves, crooks and swindlers; the Spahis never returned security deposits to individuals who rented their units or everyone who rented from the Spahis lost their security deposits; the Spahis were not paying the secured loans on their units; the bank was after the Spahis for "fraud"; the Spahis did not pay the homeowners association fees on their units; and the Spahis' units were being or would soon be auctioned off by the bankruptcy court.

The Spahis alleged these statements, which were incorporated into each cause of action, caused damage and harmed their reputations by accusing them of improper and illegal conduct, including fraud and dishonesty. In particular, in paragraphs 42 through 46 the Spahis alleged tenants renting five different units from the Spahis were approached by Stone, Isen or Pearson and told the Spahis would not be returning security deposits, their rental of the unit was illegal or other, similar disparaging comments. As a result, the tenants in all those units terminated their leases and moved out, causing the Spahis to lose expected rental fees. The names of the specific tenants, the units, the amount of rent each had been paying, the dates they moved out and the speakers and substance of the comments were identified in the pleading. The Spahis further alleged, the "statements were couched as fact and not opinion, and the existing and prospective tenants and buyers understood the statements to be statements of fact."

The fourth amended complaint also alleged that Omar Spahi entered into a written contract for the sale of unit 1809 P to Arnold Abramovicz for $2.2 million. Pursuant to the Isens and Pearson's scheme, Pearson told Abramovicz not to purchase the unit because the Spahis were crooks, the bank was after them for fraud, the property would

3

soon be subject to foreclosure and Abramovicz would be able to purchase it at a lower price through the bankruptcy court or in the foreclosure sale. Although Abramovicz had been ready to purchase the property, as a result of Pearson's statements, the sale was not completed.

The operative pleading alleged Stone had a history of personal animus toward John Spahi dating back to 2006. Stone had previously attempted to remove John Spahi from the OTHC board, and a prior lawsuit had been filed against Stone and others alleging that Stone had published false statements relating to John Spahi on his website.

According to the Spahis, the Isens intended to induce other parties, including prospective buyers and tenants, not to deal with the Spahis. Moreover, the Isens were aware of the harm to the Spahis that would result from the false statements and intended to cause such harm. The Isens did not have a good faith belief their statements about the Spahis were true or accurate, but either knew the statements were false when made or willfully and wantonly disregarded the truth.

Finally, the complaint alleged the Isens' actions violated paragraph 9.10 in the "proprietary lease,"[2] a contract between OTHC and the Isens that provided, "Cooperation. Tenant covenants that he will preserve and promote the cooperative ownership principles upon which Ocean Towers Housing Corporation has been founded, abide by the Rules and Regulations of the Board and any amendments thereto, and by his acts of cooperation with other tenants bring about a high standard in home and community conditions."

2. *The Isens' Demurrer and the Order of Dismissal*

The Isens again demurrered to the Spahis' complaint, arguing each of the five causes of action failed to allege facts sufficient state a claim (Code Civ. Proc., § 430.10, subd. (e)) and was uncertain (Code Civ. Proc., § 430.10, subd. (f)). Following briefing and argument, the trial court sustained the demurrers without leave to amend based on

_____

[2] An unsigned exemplar of the proprietary lease was attached as exhibit A to the fourth amended complaint.

the pleading's continued lack of specificity:  "You don't tell me when things occurred, You don't tell me when these statements were made.  And you use the generic defendants. . . .  Who made which statements?"

The court explained in its minute order sustaining the demurrers:  "Plaintiffs have been given five opportunities to plead the complaint.  Plaintiffs have repeatedly failed to separate out and specify the particular statements made by the various defendants or precisely to whom they were made or when.  The problem is exemplified by Paragraph 39, which apparently attributes all six statements to all defendants."  In the court's view, the specific references to statements and conduct involving the five tenants identified elsewhere in the complaint (paragraphs 42 through 46) were not sufficient to support the four tort causes of action the Spahis had attempted to plead.  The court concluded the tort causes of action were fatally uncertain and the fifth cause of action was both uncertain and failed to state a claim because the Spahis had not identified a specific contract obligation that had been breached.

In light of its prior orders permitting the Spahis to amend their complaint to remedy its deficiencies ("[f]ive attempts are enough"), the court sustained the demurrers without leave to amend and dismissed the action.  The Spahis filed a timely notice of appeal.[3]

---

[3]     The notice of appeal filed on April 12, 2012 by Alfred J. Verdi of Verdi Law Group, PC listed only Omar Spahi as the appellant.  Although that notice identified Mr. Verdi as counsel for Omar Spahi et al., and Mr. Verdi expressly designated the record on behalf of Omar Spahi et al. the following week, the Isens argue only the order of dismissal as to Omar Spahi, and not the other plaintiffs, is properly before this court.  We reject that argument and construe the notice of appeal to include all the Spahis.

A notice of appeal must be liberally construed, and it is sufficient if it identifies the particular judgment or order being appealed.  (Cal. Rules of Court, rule 8.100(a)(2).)  In the absence of prejudice to the respondents, and particularly when the issues as to the appealing party and the omitted parties are identical, courts have liberally construed an otherwise sufficient notice of appeal to include omitted appellants.  (*Beltram v. Appellate Dept.* (1977) 66 Cal.App.3d 711, 715 [construing notice of appeal filed by city to also encompass the city employee whose liability was the basis of the city's liability]; *Boynton v. McKales* (1956) 139 Cal.App.2d 777, 787-788 [notice of appeal filed by

## DISCUSSION

1. *Standard of Review*

A demurrer pursuant to Code of Civil Procedure section 430.10, subdivision (e), tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on the demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Schifando,* at p. 1081.)

Demurrers for uncertainty under Code of Civil Procedure section 430.10, subdivision (f), are disfavored and are to be sustained only if the pleading is so incomprehensible that a defendant cannot reasonably respond. (See *Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1135.) "A demurrer for uncertainty is strictly construed, even where a complaint is in some respects uncertain, because ambiguities can be clarified under modern discovery procedures." (*Khoury v. Maly's of California Inc.* (1993) 14 Cal.App.4th 612, 616.)

2. *The Spahis Adequately Pleaded a Cause of Action for Trade Libel*

Trade libel is an intentional disparagement of the quality of services or product of a business that results in pecuniary damage to plaintiff. (*City of Costa Mesa v. D'Alessio*

---

employer construed to cover an employee as well when defendants could not have been prejudiced as they must have understood plaintiff would not appeal the new trial order as to the employer only]; *Cromwell v. Cummings* (1998) 65 Cal.App.4th Supp. 10, 15 [because there was no prejudice to the respondent, notice of appeal of sanctions award by plaintiffs was deemed to include an undesignated attorney who was found jointly and severally liable for sanctions].)

6

*Investments, LLC* (2013) 214 Cal.App.4th 358, 375-376; *Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 572 (*Leonardini*).) Like defamation, trade libel requires a false statement of fact, not an expression of an opinion. (*Mann v. Quality Old Time Serv., Inc.* (2004) 120 Cal.App.4th 90, 104; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010.) Disparagement "may consist of the publication of matter derogatory to the plaintiff's title to his property or its quality, or to his business in general." (*Erlich v. Etner* (1964) 224 Cal.App.2d 69, 73; accord, *Atlantic Mutual Ins. Co. v. J. Lamb, Inc*. (2002) 100 Cal.App.4th 1017, 1035; *Nichols v. Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 773.) To constitute trade libel the statement must be made with actual malice, that is, with knowledge it was false or with reckless disregard for whether it was true or false. (*Melaleuca, Inc. v. Clark* (1998) 66 Cal.App.4th 1344, 1350.) The plaintiff must also plead and prove it actually suffered some pecuniary loss. (*Mann,* at p. 109.)

The Isens contend the Spahis did not properly allege actual malice; the alleged disparaging statements were not demonstrably false or concerned future events and thus were nonactionable opinion; and the statements were directed at the Spahis themselves, rather than their property, and thus are not actionable as trade libel. Although some of the Isens' critique of the Spahis' allegations is accurate, the Spahis nonetheless adequately pleaded a cause of action for trade libel.

> a. *The fourth amended complaint alleged statements disparaging the Spahis' property as well as their reputation*

Statements actionable as trade libel because they disparage an individual's title to property or its quality or his or her business in general may also harm that individual's reputation, for example, by implying dishonesty or incompetence. For example, in *Atlantic Mutual Ins. Co. v. J. Lamb, Inc., supra*, 100 Cal.App.4th 1017, the court considered a trade libel claim in the context of a dispute concerning an insurer's duty to defend. The court found statements charging a claimant with unlawfully violating defendant's patents disparaging to both the claimant itself and its products. (*Id.* at

7

pp. 1034-1035.) The court reasoned that the statements "amounted to a denigration of [claimant's] products" because they "clearly stated that [claimant's] products were burdened with a legal infirmity that would place a [] customer in legal jeopardy if it purchased and used or resold the product." (*Id.* at p. 1037.)

Here, the statements alleged by the Spahis certainly impugned their personal reputations with accusations of dishonesty and improper and illegal conduct such as withholding security deposits. But those same statements also potentially disparaged the quality of the Spahis' title to the Ocean Towers units and the nature of their leasing services, indicating the units were facing foreclosure or subject to assessments for unpaid homeowners association fees and suggesting tenants and prospective buyers would not be dealt with fairly by their landlord or would likely confront additional legal and financial issues when renting or purchasing the Spahis' units. (See *Polygram Records, Inc. v. Superior Court* (1985) 170 Cal.App.3d 543, 548-550 [false statement suggesting dishonesty and lack of quality may both defame individual business owner and disparage his or her product or services]; see generally Rest.2d Torts, § 623A, com. g, pp. 340-341 [explaining, although the torts of injurious falsehood and defamation protect different interests, they may overlap if a statement not only reflects upon the quality of what the plaintiff has to sell or the character of his or her business but also implies the plaintiff is dishonest or lacks integrity].)

b. *The fourth amended complaint alleged demonstrably false statements of fact*

In evaluating a demurrer to a cause of action for trade libel, the court must determine whether a reasonable fact finder could conclude the statements imply a provably false factual assertion rather than an opinion. (*Melaleuca, Inc. v. Clark, supra,* 66 Cal.App.4th at p. 1353.) The Spahis alleged the Isens told Ocean Towers tenants and others, among other things, that the Spahis were thieves, crooks and swindlers who never returned their tenants' security deposits, the Spahis were in default on the secured loans on their units and tenants would soon be evicted and the bank was after the Spahis for

8

fraud. As the Isens argue, some of the allegedly false statements challenged by the Spahis are predictions of future events ("tenants will be evicted" and units "will soon be auctioned off by the Bankruptcy Court") and are not actionable. Other of the statements, however, such as the purported failure to make loan payments, concern past and present events and are capable of verification as true or false. To whatever extent some of the statements are unclear and may be reasonably interpreted as asserting or suggesting a provably false statement of fact, that is a question for a jury to determine. (See *GetFugu, Inc. v. Patton Boggs, LLP* (2013) 220 Cal.App.4th 141, 156 ["[t]he critical question is not whether a statement is fact or opinion, but '"whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact"'"]; *Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 385 [in claims for both trade libel and defamation, dispositive question is whether fact finder could reasonably conclude the statement declares or implies a provably false assertion of fact; it is for a jury to decide how the statement was understood].)

   c. *The Spahis sufficiently pleaded actual malice*

As discussed, actual malice is an element of a claim for trade libel. (*Melaleuca, Inc. v. Clark, supra,* 66 Cal.App.4th at p. 1350.) The Spahis have pleaded the Isens "had no good faith belief that their statements as herein alleged were true and/or accurate," and they "knew that such statements were false when made, and/or willfully and wantonly disregarded the truth." Nothing more is required at the pleading stage. (Cf. *Quelimane Co. v. Stewart Title Guaranty Co*. (1998) 19 Cal.4th 26, 47 ["'[I]t is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct. . . . "[T]he question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court."'"].)

   d. *The cause of action for trade libel is not fatally uncertain*

A demurrer for uncertainty should not be sustained when the facts forming the basis for the ambiguous or unclear allegations are presumptively within the knowledge of

the demurring party. (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 30; *Smith v. Kern County Land Co.* (1958) 51 Cal.2d 205, 209; *Fanucchi v. Coberly-West Co.* (1957) 151 Cal.App.2d 72, 82-83.) "If, as the complaint alleges, defendants repeated and published statements 'to numerous other persons unknown to plaintiff but known to defendants,' then plaintiff obviously cannot particularize; and her positive allegations that other statements were made at 'various times and places to numerous persons' are matters which are patently within the superior knowledge of defendants." (*Schessler v. Keck* (1954) 125 Cal.App.2d 827, 836.) Particularly when a civil conspiracy has been alleged, "because of the very nature of a conspiracy, 'its existence must often be inferentially and circumstantially derived from the character of the acts done, the relations of the parties and other fact and circumstances suggestive of concerted action.'" (*Arei II Cases* (2013) 216 Cal.App.4th 1004, 1022.)

Contrary to the ruling of the trial court that the Spahis had once again "failed to separate out and specify the particular statements made by the various defendants or precisely to whom they were made or when . . . ," in their fourth amended complaint the Spahis pleaded specific disparaging statements had been made to five named tenants and identified which defendant—Isen, Stone or Pearson, all of whom had allegedly conspired with each other—had made the statements. At the very least, the detail contained in these paragraphs is sufficient to apprise the Isens of the nature of the allegations against them, giving them adequate opportunity to answer the allegations and to proceed to discovery. (See *Khoury v. Maly's of California Inc., supra,* 14 Cal.App.4th at p. 616.) In sum, the court erred in sustaining the demurrer to the first cause of action for trade libel.

3. *The Spahis Adequately Pleaded a Cause of Action for Defamation*

"Defamation constitutes an injury to reputation; the injury may occur by means of libel or slander. (Civ. Code, § 44.) In general, . . . a written communication that is false, that is not protected by any privilege, and that exposes a person to contempt or ridicule or certain other reputational injuries, constitutes libel. (Civ. Code, § 45; [citation].) A false and unprivileged *oral* communication attributing to a person specific misdeeds or certain

10

unfavorable characteristics or qualities, or uttering certain other derogatory statements regarding a person, constitutes slander. (Civ. Code, § 46; [citation.]" (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1242.) To be defamatory, an oral or written communication "must contain a false statement of *fact.*" (*Gregory v. McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 600.)

Because a defamatory statement """"must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability.""" (*Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 695.) However, a statement phrased as an opinion may nonetheless imply false and defamatory facts (*Milkovich v. Lorain Journal Co.* (1990) 497 U.S. 1, 20-21); and it may be actionable depending on its context. (See *Carver v. Bonds* (2005) 135 Cal.App.4th 328, 346; *Copp v. Paxton* (1996) 45 Cal.App.4th 829, 837, 839.)

"Though mere opinions are generally not actionable [citation], a statement of opinion that implies a false assertion of fact is . . . ." (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 289.) The "inquiry is not merely whether the statements are fact or opinion, but '"whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact."'" (*Ibid.;* see *Summit Bank v. Rogers*, *supra*, 206 Cal.App.4th at p. 696 ["where an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation"]; *Franklin v. Dynamic Details, Inc., supra,* 116 Cal.App.4th at p. 385 ["the question is not strictly whether the published statement is fact or opinion," but "[r]ather, the dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact"].) "Whether a statement declares or implies a provably false assertion of fact is a question of law for the court to decide [citations], unless the statement is susceptible of both an innocent and a libelous meaning, in which case the jury must decide how the statement was understood." (*Franklin,* at p. 385; see *Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260.)

11

As discussed, defamation differs from trade libel because it is directed at personal reputation, while trade libel is directed at "the goods a plaintiff sells or the character of his other business, as such." (*Guess, Inc. v. Superior Court* (1986) 176 Cal.App.3d 473, 479.) In addition, if the statements are not directed at public officials or figures or pertain to a matter of public interest, a presumption of falsity applies in defamation cases, placing the burden on defendants to prove the truth of their statements as a defense to the claim. (See *Nizam-Aldine v. City of Oakland* (1996) 47 Cal.App.4th 364, 375.)

Repeating the arguments advanced with respect to the Spahis' trade libel claim, the Isens insist the allegations of defamation in the fourth amended complaint are uncertain. For the reasons discussed, we disagree with that characterization of the specific derogatory statements made to tenants by Stone, Isen and Pearson and identified by the Spahis—statements that not only disparaged the legal title and quality of the units owned by the Spahis and the leasing services they provided but also impugned their personal integrity. The defamation cause of action is not uncertain.

Even if not uncertain, the Isens contend the alleged defamatory statements are all nonetheless nonactionable because they are not demonstrably false or, alternatively, simply constitute opinion or predictions about future events. Even if we were to agree that labeling someone a "crook" or a "swindler" was intended only as a statement of low esteem (see, e.g., *Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1019-1020 [statement that plaintiffs were "top-ranking 'Dumb Asses' cannot survive application of the rule that in order to support a defamation claim, the challenged statement must be found to convey 'a provably false factual assertion'"]; *Copp v. Paxton, supra,* 45 Cal.App.4th at p. 838 [statement by defendant that plaintiff was a "booby" could "be understood only as a vague expression of low esteem"]), a reasonable fact finder could conclude the terms imply the existence of undisclosed fact indicating the Spahis were actually guilty of fraud, theft or other criminal behavior. Moreover, the statement that the Spahis never returned security deposits constitutes a verifiable statement of fact occurring in the past and present rather than the future. Given both the presumption of falsity and the

12

allegation that the statements are, indeed, false, the Spahis have adequately pleaded the elements of a cause of action for defamation.  It was error to sustain the demurrer to the fourth cause of action for defamation.

4.  *The Spahis Adequately Pleaded a Cause of Action for Interference with Contract*

The elements of a cause of action for intentional interference with contract are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  (*Quelimane Co. v. Stewart Title Guaranty Co., supra*, 19 Cal.4th at p. 55; *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126; *Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1047.)

The Isens contend the Spahis' allegations are impermissibly vague, making it "impossible to determine which contracts, if any, were interfered with."  Similarly, the court suggested this cause of action was uncertain because it conflated wholly distinct instances of supposed misconduct into a single cause of action.  Although the Spahis' approach to pleading this tort leaves much to be desired, it is minimally sufficient to survive the Isens' demurrer.

Regardless of the manner in which a plaintiff elects to organize his or her claims within the body of the complaint, whether the allegations of wrongful conduct assert one or more causes of action depends on whether it alleges invasion of one or more primary rights.  "The primary right theory is a theory of code pleading that has long been followed in California.  It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty.  [Citation.]  The most salient characteristic of a primary right is that it is indivisible:  the violation of a single primary right gives rise to but a single cause of action."  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.)  "As far as its content is concerned, the primary right is simply the plaintiff's

13

right to be free from the particular injury suffered.  It must therefore be distinguished from the *legal theory* on which liability for that injury is premised." (*Ibid.*)  "[I]f a plaintiff states several purported causes of action which allege an invasion of the same primary right he has actually stated only one cause of action.  On the other hand, if a plaintiff alleges that the defendant's single wrongful act invaded two different primary rights, he has stated two causes of action, and this is so even though the two invasions are pleaded in a single count of the complaint." (*Skrbina v. Fleming Companies* (1996) 45 Cal.App.4th 1353, 1364; accord, *Hindin v. Rust* (2004) 118 Cal.App.4th 1247, 1257.)

Here, in a single count the Spahis pleaded multiple instances of alleged interference by the Isens with separate contracts they had entered into with different parties at different times.  That is, they have alleged violation of several different primary rights:  As discussed, in paragraphs 42 through 46 the Spahis identified five tenants who had terminated their leases allegedly as a result of derogatory statements by the Isens.  Damages in the form of lost rent from those tenants was specifically alleged.  In paragraph 49 the Spahis pleaded the Isens' statements prevented completion of a sale of unit 1809 P to Abramovicz for $2.2 million.  These separable causes of action for interference with contract, although perhaps unnecessarily confusing because grouped together, are not uncertain.  The trial court erred in sustaining the demurrer to the second cause of action for interference with contract.

5. *The Spahis Adequately Pleaded a Cause of Action for Interference with Prospective Economic Advantage*

The elements of a cause of action for interference with prospective economic advantage are:  (1) an economic relationship between the plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional and wrongful conduct designed to interfere with or disrupt this relationship; (4) interference with or disruption of this relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful conduct. (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937,

14

944; *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153-1154.) The plaintiff must also plead and prove "the interference was wrongful, independent of its interfering character." (*Edwards*, at p. 944; accord, *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393.) An act is independently wrongful "if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." (*Korea Supply Co.,* at p. 1159.)

The Isens' sole challenge to the Sphais' claim for interference with prospective economic advantage is the purported failure to allege any independent wrongful conduct constituting the interference.[4] However, the Spahis have adequately alleged the Isens made derogatory statements constituting both trade libel and defamation. The Spahis additionally allege those same statements were intended to, and did, interfere with the likely renewal of leases by existing tenants and the probability of economic benefit from new leases with prospective tenants. The Spahis further allege the Isens induced prospective buyers not to purchase their units by publishing false statements regarding the units and the Spahis themselves. The Spahis have thus adequately pleaded the predicate independently wrongful acts necessary for this cause of action. It was error to sustain the demurrer to the third cause of action for intentional interference with prospective economic advantage.

---

[4]     We acknowledge, as the Isens point out, the Spahis' opening brief does not expressly address the cause of action for interference with prospective economic advantage. However, the basis for sustaining the demurrer to this claim—uncertainty— was identical to that for the other three tort causes of action; and the purported uncertainty as to the allegations supporting this cause of action was predicated on the uncertainty of the trade libel and defamation allegations, which were addressed at length in the Spahis' opening brief. Under these circumstances, and because the Isens fully briefed the merits of the order sustaining the demurrer to this cause of action, we exercise our discretion to consider this portion of the trial court's order. (See *Locke v. Warner Bros.* (1997) 57 Cal.App.4th 354, 368 [appellate court has discretion to consider issue not raised in opening brief on showing of good cause]; *Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 322 [same].

15

6. *The Demurrer for Breach of Contract Was Properly Sustained Without Leave To Amend*

A plaintiff alleging a cause of action for breach of contract must plead: (1) the existence of a contract between the parties; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's failure to perform (breach); and (4) resulting damages. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821; *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830.) In an action based on a written contract, although a plaintiff need not plead the precise language of the contract, he or she must set forth the contract's legal effect by stating the substance of its relevant terms. (*Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 199; see 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §§ 518-519, pp. 650-651.)

The Spahis contend the Isens violated paragraph 9.10 of the proprietary lease, attached as an exhibit to the fourth amended complaint, by engaging in the various wrongful acts alleged. They do not assert they are parties to the proprietary lease executed by the Isens, but argue they are intended beneficiaries of the Isens-OTHC agreement.

"'California law permits third party beneficiaries to enforce the terms of a contract made for their benefit.'" (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1021-1022; see Civ. Code, § 1559 ["[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it"].) A contract has been made for the benefit of a third person if the terms of the contract necessarily require the promisor to confer a benefit on the third person, but "it is not enough that the third party would incidentally have benefited from performance." (*Spinks,* at p. 1022.) "'A putative third party's rights under a contract are predicated upon the contracting parties' intent to benefit' it. [Citation.] Ascertaining this intent is a question of ordinary contract interpretation. [Citation.] Thus, '[t]he circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement.' [Citation.] [¶] Under

16

long-standing contract law, a 'contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.' [Citation.] Although 'the intention of the parties is to be ascertained from the writing alone, if possible' [citation], '[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates' [citation]. 'However broad may be the terms of a contract, it extends only to those things . . . which it appears that the parties intended to contract.'" (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524; accord, *Markowitz v. Fidelity Nat. Title Co.* (2006) 142 Cal.App.4th 508, 527.)

The Isens' agreement with OTHC to preserve and promote its "cooperative ownership principles" and to act in cooperation with other tenants may have provided some incidental benefit to the Spahis, who are among the broad class of "other tenants" referred to generically in paragraph 9.10 of the proprietary lease. But the proprietary lease itself, which consists in the main of standard provisions found in many landlord-tenant agreements, does not express any intention to benefit the Spahis or other nonsignatory tenants; and nothing in the language of the agreement even remotely suggestions any such intent. Nor have the Spahis alleged the existence of any related documents or surrounding circumstances that would indicate they (or other tenants) were intended beneficiaries of the Isens' promise to OTHC to cooperate with other tenants.

"When the facts are undisputed, as they are deemed to be in connection with a demurrer, the interpretation of a contract, including the resolution of any ambiguity, is a question of law." (*Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 76; see *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1134 [when extrinsic evidence is not in conflict, interpretation of a contract is a question of law].) The trial court properly reviewed the contract to evaluate the Spahis' claim to third-party beneficiary status and correctly ruled they lacked standing to enforce the promise of cooperation in the Isens-OHTC lease agreement. The demurrer to the fifth cause of action for breach of contract was properly sustained without leave to amend.

17

## DISPOSITION

The order dismissing the action is reversed. On remand the trial court is directed to vacate its order sustaining the demurrers without leave to amend with respect to the first, second, third, and fourth causes of action, to enter a new order sustaining the demurrer to the fifth cause of action (breach of contract) without leave to amend and otherwise overruling the demurrers, and to conduct further proceedings not inconsistent with this opinion. The Spahis are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

WOODS, J.

SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.